[No. 8372.   Department Two.   May 4, 1910.]

L. K. CHURCH et al., Respondents, v. WILKESON-TRIPP COMPANY et al., Appellants, J. D. LOWMAN et al., Defendants.[1]

BROKERS—CONTRACT—BREACH—ACTION FOR DAMAGES—EVIDENCE— SUFFICIENCY. The evidence is sufficient to entitle brokers to recover damages for breach of a contract, and a nonsuit is properly denied, where it appears that they were employed by the defendants, promoters of a mining corporation, to sell bonds and stock on commission, that the defendants refused, on demand, to perfect their title to the property or to deliver the bonds, and that the plaintiffs then gave notice that they would rescind the contract and hold the promoters for their commissions as damages sustained.

PARTNERSHIP—BUSINESS NAME—STATUTORY PROVISIONS—RIGHT TO SUE. Partners may maintain an action upon a contract entered into by them as individuals without having complied with Rem. & Bal. Code, § 8369, requiring the filing of a certificate showing their assumed business name and the names of the members of the firm, where before suit brought they filed the required certificate showing that they were then doing business under the assumed name by which they sued, and that they were the only members of the firm.

BROKERS — CONTRACTS — STIPULATIONS — CONSTRUCTION — WAIVER. Where a broker's contract provided for the sale of bonds on commission within a specified time after receiving written notice of the deposit of the bonds, notice in writing is for the protection of all the parties, and is waived where the authorized agent of the principals notified the brokers that the bonds were ready for sale and delivery and that the notice would be waived, and the brokers relied and acted thereon.

BROKERS—CONTRACT OF EMPLOYMENT — BREACH — DAMAGES—EXPENSES INCURRED. Where a broker's contract for the sale of bonds on commission required the brokers to pay all expenses and outlay for advertising, etc., and on breach of the contract, the brokers sued

[1]Reported in 108 Pac. 596; 109 Pac. 113.

to recover all the commissions that they might have earned, they are not entitled to reimbursement for expenses incurred, although pleaded, and evidence thereof should be excluded.

BROKERS—CONTRACTS—ACTION FOR BREACH—ISSUES AND PROOF—EVIDENCE—ADMISSIBILITY. In an action by brokers for damages for breach of a contract to sell bonds on commission, breach of the contract having resulted from the admitted failure of the defendants to perfect their title to the property, it is error likely to prejudice the jury to admit in evidence escrow deeds showing the consideration that was to have been paid, the deeds not having been delivered and there being no issue in regard to the title or failure of title.

DAMAGES—BREACH OF CONTRACT—CONTEMPLATED PROFITS—BROKERS—COMMISSIONS. Brokers seeking damages for breach of a contract to sell bonds on commission may recover for loss of profits, since the same are directly contemplated in the contract; but the loss must be reasonably certain, to be ascertained by the jury, although not always capable of precise computation.

EVIDENCE—OPINIONS—CONTEMPLATED PROFITS. The opinion of a witness that brokers could have earned all their commissions on the sale of bonds is inadmissible as a conclusion as to the probable results, and which must be drawn by the jury.

BROKERS—CONTRACTS—BREACH—DAMAGES—CONTEMPLATED PROFITS—EVIDENCE—SUFFICIENCY—EXCESSIVE VERDICT. In an action by brokers to recover damages for breach of a contract to sell an issue of $300,000 in bonds of a mining company, within a specified time, the evidence is insufficient to show that they could have sold all the bonds and earned the entire commissions, where plaintiffs merely proved probable sales to the amount of $25,250, and it appeared that the $300,000 was secured on coal lands recently purchased for the sum of $65,000; and a verdict for the entire commissions is based on conjecture and speculation, and should be reduced to the amount of the commissions on the probable sales shown.

COSTS—ON APPEAL—OF APPEAL BONDS. Under Rem. & Bal. Code, § 6226, providing that any receiver, assignee, trustee, guardian, executor, etc., may include as part of his lawful expenses a reasonable sum paid to a corporation for a surety bond, and that the party entitled to recover costs may include the same in all actions and proceedings, costs on appeal will be allowed for the premium paid for a surety company's bond upon appeal given by a receiver, trustee, etc.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 17, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, for $26,750 for

breach of contract, after granting a nonsuit in favor of certain of the defendants. Affirmed on condition of remitting $22,331.25.

*Hughes, McMicken, Dovell & Ramsey*, for appellants.

*Reynolds, Ballinger & Hutson*, for respondents.

CROW, J.—This action was commenced by L. K. Church and Sidney Drake, copartners as S. Drake & Company, against Wilkeson-Tripp Company, a corporation, James C. Drake, A. G. Bennett, Victor E. Tull, Frank Hanford, James M. Ashton, J. D. Lowman, and C. H. Hanford, to recover damages arising out of the defendants' alleged breach of the following written contract:

"MEMORANDUM OF AGREEMENT, Made in duplicate this twenty-fourth (24th) day of January, 1908, by and between James C. Drake and A. G. Bennett—(Trustees for and representing the promoters and organizers of the Wilkeson-Tripp Company, hereinafter named)—parties of the first part and L. K. Church and Sidney Drake of Spokane and Seattle, Washington, hereinafter called the parties of the second part,

"Witnesseth: That whereas, the parties of the first part together with their associates, J. D. Lowman, Victor E. Tull, Frank Hanford, C. H. Hanford and James M. Ashton, are the organizers of a certain company now in the process of incorporation, known as the Wilkeson-Tripp Company, and as such they are the owners of those certain coal properties with the rights and privileges in connection therewith, located in Pierce county, in the state of Washington, more particularly described as follows: The east half (E. ½) of section fourteen (14) in township eighteen (18), North, range six (6) east. And whereas, when said company is organized, it is the purpose and intent of the parties of the first part and their associates, to bond its properties for the sum of three hundred thousand dollars ($300,000). And whereas, the parties of the second part have undertaken to place and sell the bonds of said company for the compensation and upon the terms hereinafter mentioned.

"Now therefore, these presents witnesseth: That for and in consideration of the premises and the mutual benefits and

compensations hereinafter referred to, the parties hereto hereby stipulate and agree in manner following:

"First: Said bonds are to be of the following denominations . . . the entire issue to have an aggregate face value of three hundred thousand dollars ($300,000) as above stated.

"Second: The parties of the second part undertake to sell fifty thousand dollars ($50,000) worth of said bonds within sixty (60) days from the time the bonds are deposited with the trustees, under the mortgage securing the same and written notice of the time such deposit is to be given to the parties of the second part or to one of them. The remainder of said bonds are to be sold by the parties of the second part within ninety (90) days after the expiration of said sixty (60) days.

"Third: All of the bonds are to be sold at par and the parties of the second part are to receive ten per cent commission for their services in selling same, such commission to cover and include all expenses and outlay of every kind incurred by the parties of the second part. In this connection, however, it is distinctly understood that the parties of the second part are to have the exclusive right and privilege to sell the entire issue of said company's bonds during the times above mentioned, but, should any sale be effected by other parties acting for or under direction of any of the above organizers, such party shall be allowed by the parties of the second part, five per cent commission upon such sale.

"Fourth: It is understood that the parties of the first part and their associates, shall proceed forthwith and perfect the organization of such company and take all proper steps in the way of drawing and recording the necessary mortgage, and the lithographing of bonds and stock, and all other matters for the purpose of effecting the thorough organization and legally securing the bonds.

"Fifth: It is understood that the parties of the second part shall offer and deliver to every bond purchaser, a stock bonus of the equivalent to fifty per cent of the par value of any bond or bonds, purchased by him, and that the parties of the first part and their associates are to protect the parties of the second part in so doing and see that such fifty per cent bonus in the stock of the company is forthcoming and at the disposal of the parties of the second part for the purpose of making such delivery.

"Sixth: The capital stock of said company is to be not less than six hundred thousand dollars ($600,000), it being the intent that after the payment of one hundred and fifty thousand ($150,000) in stock bonus above shown, there shall be four hundred and fifty thousand ($450,000) dollars of the company's stock available, and that the balance of the $450,000 worth of stock at par, the parties of the second part shall be entitled to receive as further compensation for their services in effecting the sale of bonds, a payment in stock equivalent to five per cent of said $450,000 provided the parties of the second part sell all of the aforesaid bond issue; in the event of their selling less than said issue, then the percentage of stock payable to them from said $450,000 worth, shall diminish in the ratio and proportion that the amount of bonds which they do sell may bear to the entire issue.

"In witness whereof." etc.

A nonsuit was entered in favor of defendants J. D. Lowman and C. H. Hanford, and a verdict for $26,750 was returned against all other defendants, who have appealed from the final judgment entered thereon.

Appellants contend that the trial court erred in denying their several motions for a nonsuit and judgment. Construing the evidence most favorably to the respondents, the following facts are shown: That at the time the written contract was executed, James C. Drake and his associates did not hold title to the coal land; that they had an option to purchase it from one Tripp for $65,000; that the Wilkeson-Tripp Company, a corporation, was formed; that most of its capital stock was subscribed, but that none was issued; that the contract was ratified by the board of trustees; that the bonds and a trust deed were prepared, executed, and left with the American Savings Bank and Trust Company of Seattle, as trustee; that the legal title not being in the Wilkeson-Tripp Company, the trust deed was not recorded; that a deed from Tripp to the appellant Frank Hanford had been placed in escrow to be delivered upon the payment of $65,000; that Frank Hanford had executed and placed in escrow a

deed from himself to the Wilkeson-Tripp Company, reciting a consideration of $175,000; that the appellants intended to have all the title deeds and the trust deed delivered and recorded as soon as the $65,000 was paid; that no written notice of the deposit of the bonds with the trustee was given to the respondents, or either of them, but that an oral notice was given them by Frank Hanford, he directing them to immediately proceed with the sales; that written notice was waived by the respondents for themselves and also by Frank Hanford on behalf of himself and the other appellants; that at a meeting of the trustees of the Wilkeson-Tripp Company previously held, the respondents had been directed to take all orders from Frank Hanford, and to consult him on all matters pertaining to their contract; that the appellants A. G. Bennett, James E. Drake, James M. Ashton, and Frank Hanford, all trustees, were present and participated in the proceedings; that the appellant Victor E. Tull subscribed for stock and had knowledge of respondents' acts; that in pursuance of the oral notice given by Frank Hanford, the respondents opened an office in Seattle, advertised in Seattle and Tacoma papers, issued a prospectus, and attempted to sell the bonds; that a stock book containing blank certificates of the Wilkeson-Tripp Company, signed by its president and secretary, and its corporate seal, were left with respondents that they might issue stock to purchasers of bonds; that in March, 1908, respondents tendered $250 to the trustee, and demanded the delivery of a bond, which they had sold for that amount; that the trustee refused to deliver the bond, being unable to do so for the reasons that the appellant corporation, Wilkeson-Tripp Company, had not yet obtained title, that the trust deed had not been recorded, that the $65,000 purchase money due Tripp had not been paid, and that the bonds were not legally secured; that the respondents demanded of the appellants that they perfect their title, which they failed to do, and that the respondents thereupon notified appellants they would rescind the contract and

hold the appellants for their commissions as damages sustained. Upon these facts the nonsuit was properly denied.

The appellants Ashton and Tull earnestly insist, that neither of them gave or waived the written notice required by the contract; that they knew nothing of the acts of the respondents, and that Frank Hanford had no authority to represent them in giving an oral notice or in waiving a written one. The evidence offered tending to show the authority of Frank Hanford, although disputed, was sufficient to sustain the jury in finding such authority.

It is contended that the respondents are not entitled to maintain this action, because they failed to comply with chapter 145, Laws 1907, page 288 [Rem. & Bal. Code, § 8369 et seq.], by filing the certificate therein required, and that one Tom Church, having an interest in the contract, has not been joined as a party. The contract was made by the respondents L. K. Church and Sidney Drake as individuals. Before commencing this action they filed the required statutory certificate, showing that they were then doing business in the name of S. Drake & Company. The evidence shows they were the only members of the firm, and that Tom Church had no relation to the partnership other than as a clerk or employee.

Appellants next contend that the respondents were not entitled to proceed with the sale of the bonds, no written notice that they were ready being given. The notice contemplated was for the benefit of both parties. It fixed the time within which the bonds were to be sold, and the dates upon which the sixty and ninety day periods would expire. It was also intended to protect the appellants from having the bonds placed upon the market before they were properly secured and ready for delivery. The respondents testified that they did not know the appellants had not acquired title; that Frank Hanford had told them the title was perfect; that the bonds were ready for sale and delivery; that the giving of the written notice would be waived, and that they

relied and acted upon his statements. Under this evidence, and other evidence properly admitted, the jury could find, and must have found, that written notice had been waived by all of the appellants.

The respondents have sued for all commissions they would have earned, and the par value of all stock they would have received, had they sold the entire issue of bonds. Having done so, they are not entitled to reimbursement for expenses incurred, although the same were pleaded. By the terms of their contract their commission was to cover and include all expenses and outlay of every kind incurred by them; yet on the trial they were permitted to introduce evidence that they had incurred advertising, office, and other expenses in large amounts. Contracts for advertising were introduced and specific items of expense were shown. The appellants objected to all this evidence and now insist that it was erroneously admitted. The respondents on the trial, disclaiming any attempt to recover for expenses incurred, introduced other evidence to show how many bonds it did sell and could have sold had there been no breach of the contract. This action being for the recovery of all the commissions, and the respondents having contracted to bear all their own expenses, it is difficult to conceive any theory upon which evidence showing their expenses became material. The evidence should have been excluded.

The complaint alleged, and the answer admitted, that the appellants had not acquired any title to the coal land. There was no issue as to the delivery of the deed from Tripp to Frank Hanford, or from Frank Hanford to the Wilkeson-Tripp Company. During the trial it appeared that Frank Hanford was to pay $65,000 to Tripp for his deed, and the respondents offered in evidence the deed from Frank Hanford to the Wilkeson-Tripp Company, which recited a consideration of $175,000. To this offer the appellants objected, contending there was no issue as to the title, or failure of title. It having appeared that Frank Hanford was only to

pay $65,000 for the land, it can be readily understood how knowledge of the fact that he immediately conveyed it to the Wilkeson-Tripp Company by a deed reciting a consideration of $175,000, in the absence of any explanation, which he was not required to make, would prejudice the jury, and affect the amount of the verdict. There was no good reason for permitting the jury to see the deed or know its contents. It tended to prove no issue in the case. This is not an action involving any issue of fraud, but is one arising out of an alleged breach of contract, upon which the respondents predicate their right of recovery. Assuming that Frank Hanford was attempting to defraud his associates—a fact not proven—that circumstance could not, and should not, have any bearing upon respondents' recovery or right of recovery. The failure of title, after being admitted by the pleadings, was not in issue. The trial court erred in admitting the deed in evidence.

The jury returned a verdict for $26,750, which the appellants now claim was excessive. The respondents were to receive a stock bonus and a ten per cent commission on all bonds sold. The evidence shows the they procured a written contract from one Gordon for $5,000 of bonds, on which he paid $200; that they sold by oral contract $10,000 of bonds to one Worms, on which he made a cash payment of $1,400; that they had the oral promise of one Thompson to purchase $10,000 of bonds, no payment being made, and that one Pratt purchased and paid for a $250 bond. No other contracts of sale, written or oral, were made. Respondents claim they had other inquiries from prospective purchasers who were investigating the bonds, but there is no satisfactory evidence to show probable sales to any of these parties, who at the best only contemplated an investigation of the bonds. One J. R. Moore, a broker of quite limited experience in handling securities, testified that he had investigated the bonds and respondents' methods for selling them; that, in his opinion, they could have all been sold at a total

expense of six per cent of their face value; that he, as an employee of respondents, had tried for about three weeks to make some sales; that he had made none, but that he had interested several unnamed parties. This, in substance, is all the evidence showing how many bonds the respondents did sell, or could have sold.

In an action for damages arising out of the breach of a contract, the plaintiff is entitled to recover such losses as he has actually sustained. When the direct purpose of the contract is to enable one of the parties to earn commissions or profits, he is entitled to recover profits actually lost as his damages for the breach of the contract by the other party. As a condition precedent to a recovery of damages for loss of contemplated profits, it must, as a general rule, appear that such loss was reasonably certain and not a fictitious or imaginary one; that fact being established, the damages are to be ascertained by the jury, although not always capable of being precisely measured by exact methods of computation.

"Special damages may be recovered when the party in default had notice of the special circumstances out of which such damages naturally arose but not in the absence of such notice. Remote, speculative or conjectural damages are not recoverable. As a general rule, mere prospective profits are too remote to be considered in estimating damages. Profits are not excluded because of anything inherent in their nature, but because they are remote and contingent, and they may be recovered if proven with reasonable certainty. Profits must be certain in their nature, and in respect to the cause from which they proceed." 13 Current Law, 1184-1185, and cases cited.

The usual rule of excluding profits in estimating damages does not apply where the earning of the profits is directly contemplated in the contract which has been breached.

"In order to recover profits in a case of a breach of contract, such profits must have been within the contemplation of the parties at the time that the contract was made, and where such profits do not enter into the contract itself they will be denied. Anticipated damages, different from those which

would ordinarily be sustained, are not always recoverable, but will only be awarded when in view of special circumstances they may be regarded as the natural and direct result of the breach, and are not problematical, but are capable of being forseen and of being estimated with reasonable accuracy. In all cases the damages claimed should be capable of being definitely ascertained. Where the damages claimed are so speculative and dependent upon numerous and changing contingencies that their amount is not susceptible of actual proof with any reasonable degree of certainty no recovery can be had." 13 Cyc. 36.

In *Witherbee v. Meyer*, 155 N. Y. 446, 453, 50 N. E. 58, the court says:

"The grounds upon which is founded the general rule of excluding profits in estimating damages, are (1) that in the greater number of cases such profits are too dependent upon numerous and changing contingencies to constitute a definite and trustworthy measure of damages; (2) because such loss of profits is ordinarily remote and not the direct and immediate result of a non-fulfillment of the contract; (3) the engagement to pay such loss of profits, in cases of default in performance, does not form a part of the contract nor can it be said, from its nature and terms, that it was within the contemplation of the parties."

The mere fact that the respondents entered into a contract for commissions upon contemplated sales does not conclusively show their ability to sell all or any of the bonds within the stipulated time. It is difficult to lay down an exact rule by which damages arising from a loss of contemplated profits may be justly measured. It is manifest that the opinion evidence of the witness Moore was not proper as a basis of computation. It was for the jury and not the witness to arrive at a conclusion as to the probable results of the efforts made by the respondents. In *Federal Iron & Brass Bed Co. v. Hock*, 42 Wash. 668, 670, 85 Pac. 418, 419, this court, discussing profits as an element of damages, said:

"Ofttimes in the breach of a contract of this character, the only damages sustained are those of future profits. These may be of a substantial character in contemplation of law,

and such as the injured party should be entitled to recover from the party who has without justification broken the contract. The recovery must, of course, be limited to the amount which from all the surrounding conditions may be deemed to have been reasonably certain had the breach not occurred."

In a case of this character much liberality in the admission of evidence tending to show profits lost should be permitted. The circumstances surrounding the parties are to be considered as bearing upon the amount of probable sales the respondents would have made. In an effort to estimate the probable sales and profits arising therefrom, all facts affecting the value and character of the property which secured the bonds should be considered. With this purpose in view, let it be assumed that the appellants had acquired good title to the coal land; that Tripp had been paid; that the title deeds and the trust deeds securing the bonds had been recorded, and that the bonds had been ready for delivery. What amount of bonds could the respondents then have sold? As men of ordinary business capacity and intelligence, they should have anticipated that prospective investors, before subscribing for the $300,000 issue of bonds or for any considerable portion thereof, would investigate the nature, value, and extent of the security covered by the trust deed. They would not rely only upon the advertisements and the prospectus prepared by the interested parties. Upon investigation they would have learned that the only security for the $300,000 issue of bonds actually covered by the trust deed was a half section of coal land for which the appellant had recently paid $65,000 only. To conclude that investors would have purchased all or any considerable portion of these bonds under such conditions involves considerable credulity, and is to assume that they were to be misled as to the actual facts, or that they would invest large amounts without any sufficient security and depend upon future advances in value for their protection. Careful investors do not transact business in any such manner. The parties who had severally

purchased $5,000 and $10,000 of the bonds and had made payments thereon had recently sustained intimate and confidential business relations with one of the respondents, and they undoubtedly confided in him and relied upon his representations. The only other payment actually made was one of $250.

If this were an action for damages resulting from personal injuries, in which the jury would be permitted much latitude in making an award, an excessive verdict would not be sustained. While, as before stated, a liberal rule should be adopted for estimating the damages in this action, we fail to see how a verdict for $26,750 can be sustained. The entire compensation the respondents could have earned in cash and in stock at par had they fully performed the contract would have been seventeen and one-half per cent, or $52,000. The only probable sales shown were those to Gordon, $5,000; to Worms, $10,000; to Pratt, $250; to Thompson, $10,000; $25,250 in all. All other evidence offered to show probable sales is too visionary to become the basis of an award. The utmost that could have been earned on these sales in commissions and in stock at par would have been $4,418.75, and the evidence, which we have liberally construed in favor of the respondents, is not sufficient to sustain a verdict for damages in any greater sum.

Other assigned errors predicated upon instructions given and refused need not be discussed, as the points involved are fully covered by what we have heretofore said. Although we have found that, under the issues framed, the trial court erred in admitting evidence of expenses incurred and the deed from Frank Hanford to the Wilkeson-Tripp Company, reciting a consideration of $175,000, our conclusion is that such error could have been prejudicial only in so far as it may have affected and increased the amount of damages awarded, and that it will not be necessary to direct a new trial except at the election of the respondents. It is therefore ordered that, if within twenty days after the filing of the re-

mittitur herein the respondents shall serve upon the appellants and file with the clerk of the superior court their written election to remit all of the judgment entered in excess of $4,418.75, with interest thereon from the date of the trial, the judgment as thus reduced will be affirmed. Otherwise a new trial will be awarded. The appellants will recover their costs on this appeal.

PARKER, DUNBAR, and MOUNT, JJ., concur.

### ON PETITION TO RETAX COSTS.
[Decided June 10, 1910.]

DUNBAR, J.—This is a petition to retax costs. Respondents, in their motion to retax, object to the item in appellants' cost bill, "premium on appeal bond, $280." Section 6226, Rem. & Bal. Code, is as follows:

"Any receiver, assignee, trustee, guardian, executor, administrator, committee, or other fiduciary, required by law to give bond as such, may include as a part of his lawful expenses, such reasonable sum paid to such a corporation for such suretyship, not exceeding one per cent per annum on the amount of said bond, as the head of the department, court, judge or officer by whom, or court or body by which he was appointed, allows, and in all actions and proceedings, the party entitled to recover costs may include therein such reasonable sum as may have been paid such company for executing or guaranteeing any such bond or undertaking therein as may be allowed by the court or judge before whom the action or proceeding is pending."

This section is construed by the petitioners as referring wholly to fiduciary bonds the expense of which had been allowed by the court, and it is their contention that the term "all actions and proceedings," found therein, refers to actions in which bonds have been given by receivers and other assistants of the court to carry out the court's functions, and not the proceedings where bonds are given by parties to effectuate their own purposes. This construction, it seems to us, does not give full effect to the statute quoted. A receiver, assignee, trustee, guardian, executor, administrator, etc., un-

der this statute would be entitled to recompense for his official bond where there was no action of any kind whatever involved, and the statute, after making provision for charges of that kind by said officers, provides generally that, "in all actions and proceedings, the party entitled to recover costs may include therein," etc., thereby making a special provision for actions and proceedings. We are unable to give the statute the limited construction contended for by the petitioners, and the petition will therefore be denied.

RUDKIN, C. J., MOUNT, CROW, and PARKER, JJ., concur.