[No. 9719.   Department Two.   January 23, 1912.]

## BEATRICE B. McLEOD et al., Administrators etc., Respondents, v. MORRISON & ESHELMAN, Appellant.[1]

FRAUDS, STATUTE OF—SALE OF LAND—BY AGENT.   Verbal authority to find a purchaser for land does not authorize the agent to execute a binding contract of sale.

VENDOR AND PURCHASER—CONTRACT—BY AGENT — RATIFICATION— BROKERS.   A broker's contract to sell real estate, he only having authority to find a purchaser, is ratified where, with full knowledge of the contract and all the material facts, nothing was done to disavow the sale or question the broker's authority to make it, and letters were written promising a deed as soon as it could be secured.

SAME—BROKER'S CONTRACT UNDER SEAL—RATIFICATION.   The fact that an unauthorized broker's contract to sell real estate was executed under seal, does not prevent an implied ratification of the contract from silence and acquiescence therein, especially in view of Rem. & Bal. Code, § 8751, abolishing the use of private seals in contracts and deeds.

PRINCIPAL AND AGENT—CONTRACTS OF AGENT—RATIFICATION—CONSIDERATION.   No new consideration is necessary for the ratification

[1]Reported in 120 Pac. 528.

of the unauthorized contract of an agent, the consideration of the original contract being sufficient.

SPECIFIC PERFORMANCE—TENDER—WAIVER. In seeking specific performance, a tender of the last deferred payment on a land contract is excused by the positive statement that it would be useless.

SPECIFIC PERFORMANCE—ACTIONS—LACHES. There is no laches which will be a defense to specific performance where the vendee did all that he could to secure a deed, and the delay was at the solicitation of the vendor.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 15, 1910, in favor of the plaintiffs, in an action for specific performance, after a trial on the merits. Affirmed.

*Charles E. Patterson* and *Charles R. Crouch*, for appellant.

*G. G. Lee* and *Byers & Byers*, for respondents.

ELLIS, J.—Appeal from a judgment decreeing specific performance of a contract for sale and conveyance of real estate.

On February 14, 1903, respondents' intestate, who lived at Toppenish, Washington, entered into a written contract with one William E. Smith for the purchase of certain lots, in Aldine Heights addition to West Seattle, for an agreed price of $1,025. The contract acknowledged payment of $300 on its delivery, and provided that $375 should be paid on July 1, 1903, and $350 on January 1, 1904. An endorsement on the contract shows payment of the first of these deferred payments on July 3, 1903. There was evidence to show that the appellant Morrison & Eshelman, a corporation, at the time of and prior to the execution of this contract, had, under an agreement with the owner of Aldine Heights addition, an option on, or at least the exclusive sale of, all lots in that addition. The evidence tended to show that the appellant corporation had listed the lots here in question with Smith as a real estate broker, with verbal authority to secure a purchaser, but had never given him

authority to execute any contract of sale in its name or otherwise. He had only the authority of any ordinary real estate broker. Under this authority, he had, prior to the sale here in question, produced a purchaser and appellant had taken earnest money and given the purchaser a receipt for it, but this sale was abandoned. Appellant claims that, after this transaction, no authority of any kind was given Smith to sell the lots to respondents' intestate, McLeod. The secretary-treasurer of the appellant, however, testified that, after this transaction, Smith was not told that he could not sell to any one else. The evidence fails to show any revocation of Smith's authority as a broker to find a purchaser. This authority, which we must assume continued, was not sufficient to authorize Smith to execute a written contract of sale, either in his own or in appellant's name, which would be binding upon the appellant. *Carstens v. McReavy,* 1 Wash. 359, 25 Pac. 471. On the whole record, it appears that Smith was agent for the appellant to find a purchaser; but if he intended to bind the appellant by the contract of sale here in question, he had not sufficient authority for that purpose.

The evidence does not show that Smith at the time of executing the contract informed the respondents' intestate that he was acting, or assuming to act, for the appellant; but it does show that, when the last payment was due, Smith could not convey title, and afterwards, in 1905, wrote the intestate that he would "see the other party about your deed for Aldine Heights;" and again, in March, 1907, as follows: "I met Mr. Eshelman yesterday afternoon, and I asked him about your calling for your deed and he said they were having trouble about a settlement with the owner and he would let me know a little later about it." While this evidence was not competent to show agency, it was competent as showing when respondents' intestate learned that Smith had assumed to act for appellant in making the contract.

The respondents' intestate, soon after this, took the mat-

ter up directly with the appellant. Appellant's secretary-treasurer testified that, some time in 1907, respondents' intestate came into appellant's office and showed him the contract. The intestate's death precluded evidence as to what demands were then made, but three letters in evidence sufficiently show that the intestate was insisting on the performance of the contract. The first of these letters, dated March 17, 1908, was signed by appellant's treasurer personally. The writer says:

"I thought we would get matters adjusted long before this so that we might be in position to deliver to you the deed for the seven lots you purchased of W. E. South (Smith) on contract, but I am sorry to say that we have not definitely reached that point yet, and cannot now state positively when we will be in position to deliver deed."

The letter goes on to explain the delay as being caused by a difficulty with the owner of the addition, and that it might be necessary for appellant to sue her before procuring deed, and then continues:

"In this event it may require some time yet before we can expect to receive the deed. If you prefer to relinquish or assign your contract on some equitable basis, to waiting for the deed, we are willing to afford you the opportunity, as we feel that you have been withheld quite too long in this matter on account of the unfortunate condition this matter has assumed."

The writer concludes with an offer to take an assignment of the contract and pay back all payments made thereon and taxes paid on the land by the intestate, with seven per cent interest on these sums. The respondents' intestate answered this letter, under date of March 25th, as follows:

"Your favor of Mar. 17th received and contents noted, and would say that in buying those lots I done so for speculation and not for 7% interest. I could have invested the money here and made 500% and have done it. If you feel like you would rather pay me $500 per lot or $3,500 for the seven lots we may make a deal. I have been very patient but there will be a limit to it one of those days."

Appellant's reply to this letter was dated April 1st, and signed by the appellant corporation by its treasurer, and, among other things, contains the following:

"As desirous as we are to get this matter closed up and to give title to the property, it is quite certain we cannot convey title by deed till we can get it from this party in whom the record title now stands. If we cannot settle with this party on a reasonably fair basis, and are compelled to sue to enforce such a settlement, there is no telling how long it may take to secure deed.

"It is in view of this complicated state of affairs making it uncertain as to how long we may have yet to wait for a deed to the property and a desire to get the matter quickly adjusted that we were led to make the proposition to you that we did. If however, you prefer to abide the necessary time it may take to secure the deed, all well and good, we have no objections. We will continue to do as we have been doing, exerting our best efforts to obtain an equitable settlement with the party and secure deed for the property in question as quickly as it is possible. This is as well as we can do."

The last of these letters being signed in the corporate name, and relating to the matters discussed in the first letter, conclusively shows that the first letter was also written on behalf of the corporation, though signed by its treasurer personally.

The respondents contend that this correspondence constituted a ratification of the contract, regardless of the fact that the contract was made in the agent's name and in excess of his authority, or even in the absence of any authority. This contention must be sustained. There can be no question that the appellant had full knowledge of all the material facts connected with the transaction at the time these letters were written. At least as early as the fall of 1907, the contract had been exhibited to its secretary-treasurer. That contract with the endorsements divulged the whole transaction including the payments made and the amount unpaid. These letters written some months later conclusively

show that neither then nor afterwards did the appellant dis-
avow the sale. In neither of these letters was Smith's author-
ity questioned or the sale repudiated. On the contrary they
tacitly assume that the appellant held itself bound to convey,
and merely sought time to secure the title that it might do
so. It requires much less positive action to ratify as to
third persons than in favor of the agent himself. Mere
silence and inaction, under the other circumstances of this
case, would be strong evidence of ratification in favor of the
purchaser. 1 Am. & Eng. Ency. Law (2d ed.), p. 1209;
*Triggs v. Jones*, 46 Minn. 277, 48 N. W. 1113; *Hartwell v.
Equitable Mfg. Co.*, 78 Kan. 259, 97 Pac. 432; *Philadelphia
etc. R. Co. v. Cowell*, 28 Pa. St. 329, 70 Am. Dec. 128;
*Heyn v. O'Hagen*, 60 Mich. 150, 26 N. W. 861.

In any event, these letters, coupled with appellant's knowl-
edge of the contract upon which the respondents' intestate
relied, amounted to an implied ratification of the contract.
They are wholly inconsistent with any other intention.

"Ratification of the acts of an agent need not in most
cases be express, but may be implied from the acts and con-
duct of the principal, and generally speaking a ratification
may be implied from any acts or conduct on the part of the
principal reasonably tending to show such an intention on
the part of the principal to ratify the acts or transactions
of the alleged agent, particularly where his conduct is in-
consistent with any other intention, or where it appears that
he has repeatedly recognized and approved similar acts done
by the agent. So a ratification may be implied where the
principal has carried out or offered to perform a part of
an unauthorized agreement with knowledge of the whole, . ."
31 Cyc. 1263, 1264.

See, also, *Goss v. Stevens*, 32 Minn. 472, 21 N. W. 549.

Appellant contends that, because the contract was made
in the agent's name and was executed under seal, parol evi-
dence was inadmissible to show ratification, and that no suit
can be maintained against the appellant upon the sealed
contract to which he was not a party. It is true that this
was the rule at common law, but even at common law the rule

did not apply when no seal was necessary to the validity of the contract. 31 Cyc. 1262; 1 Am. & Eng. Ency. Law (2d ed.), p. 1212; *Hammond v. Hannin*, 21 Mich. 373, 4 Am. Rep. 490.

Our statute, Rem. & Bal. Code, § 8751, has abolished the use of private seals to deeds and contracts in writing, and expressly declares that, "the addition of a private seal to any such instrument or contract in writing hereafter made, shall not affect its validity or legality in any respect." While this court has held that a seal to an instrument which would have required a seal at common law still imports a consideration, as it did at common law (*Monro v. National Surety Co.*, 47 Wash. 488, 92 Pac. 280), in most other respects the statute has abrogated the common law distinction between specialties and simple contracts. Otherwise the statute would be meaningless. *Williams v. Blumenthal*, 27 Wash. 24, 67 Pac. 393; *Abb v. Northern Pac. R. Co.*, 28 Wash. 428, 69 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293.

The case of *Rutherford v. Montgomery*, 14 Tex. Civ. App. 323, 37 S. W. 625, is directly applicable to the questions here involved. In that case, the sole question was whether a corporation, by ratification, could be held responsible to the grantee on the warranty contained in a deed executed by an unauthorized person assuming to act as agent who took title and conveyed by warranty deed in his own name. The court, after stating the facts showing ratification, held in effect that whether the party assuming to act as agent had any original authority was immaterial to the question of ratification. As to the effect of the statute abolishing private seals, the court said:

"Nor does the fact that in this instance the instrument executed by the undisclosed agent is a deed affect the application of the principle above stated. It was held at common law that one could not be charged as a principal upon an instrument under seal, such as a deed, unless his character was disclosed upon the face of the instrument. It will be noted, however, that this distinction as to liability cannot

apply in this state, where the use of a seal is in no sense necessary to the validity of a deed. Mechem, Agency, § 702. By the act of 1858, the distinction between a sealed and an unsealed instrument is eliminated. *Clayton v. Mooring,* 42 Tex. 182. A ratification under seal is not required in this state in a case of this kind. Mechem, Agency, § 140. Nor is the transaction obnoxious to the statute of frauds, having shown a subsequent ratification of the act of the agent in signing the contract. The ratification is the equivalent of a prior authorization, and the contract is in writing, and is deemed to have been executed by the agent of the principal thereunto lawfully authorized."

Appellant next contends that the ratification was void for lack of a new consideration. No new consideration was necessary. The consideration of the original contract was sufficient to support the ratification. 31 Cyc. 1260.

It is further objected that no tender of the last deferred payment was made. It sufficiently appeared, however, that tender was prevented by the positive statement of appellant's treasurer that it would be useless. The authorities are uniform that this rendered formal tender unnecessary.

It is claimed that respondents' intestate was guilty of laches, but we think the evidence wholly fails to sustain the contention. It is plain that, both before and after the ratification, he did everything in his power to secure the deed. The delay after he came into direct communication with appellant corporation was upon its own solicitation.

It was admitted at the trial that the appellant still holds title to the lots, and is in a position to specifically perform the contract.

The judgment is affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.