[No. 15935.   Department Two.   December 28, 1920.]

WALDRON COMPANY, *Respondent*, v. BEATTIE MANUFACTURING COMPANY, *Appellant*.[1]

PRINCIPAL AND AGENT (59)—CONTRACTS BY AGENT—RATIFICATION— KNOWLEDGE OF FACTS. An agent's sale of rugs is ratified where the manufacturer had prompt notice of the sale and did not reject the order but gave as an excuse for not shipping that it did not have the goods in stock, and did not refuse to ship them until five months after the sale.

SALES (154) — REMEDIES OF BUYER — BREACH OF CONTRACT— MEASURE OF DAMAGES. The measure of damages for breach of a manufacturer's contract to sell rugs to a retailer at S., is the difference between the contract price and the price they could have been retailed at S., less the cost of the resale.

Appeal from a judgment of the superior court for King county, Ronald, J., entered February 7, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

[1]Reported in 194 Pac. 557.

*Peters & Powell, Marion Edwards* and *Donworth, Todd & Higgins* (*Hyman Zettler,* of counsel), for appellant.

*J. Speed Smith, Henry Elliott, Jr.,* and *Kerr & McCord,* for respondent.

MOUNT, J.—This action was brought to recover damages for the breach of an alleged contract for the purchase of rugs. The defense was a denial of the contract and an affirmative defense, in substance, that a general custom of the trade is that a salesman, employed by a manufacturer to take orders from retailers, takes such orders subject to acceptance or rejection by the manufacturer, and has no authority himself to accept or reject an order; and that the plaintiff was notified, at and prior to the time of the making of the memorandum, that the order was subject to acceptance or rejection by defendant; and that the defendant notified the plaintiff, shortly after the making of the order, that the same was not accepted; that the goods described in the memorandum are imperfect goods, and that it is the custom of the trade for manufacturers to sell such goods only to purchasers who have purchased perfect goods; that at the time the order was given, plaintiff stated that he desired to purchase perfect goods, and was thereby entitled to some imperfect goods; but that plaintiff postponed, temporarily, giving such an order, and afterwards refused to give such order; and that, by reason thereof, he was not entitled to purchase any of the imperfect goods. Upon these issues, the case was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff for $2,400. The defendant has appealed from that judgment, and urges that the court erred in giving two instructions.

The facts, as testified to by the respondent, which we must assume the jury found to be true, are in substance as follows: The respondent is a retail dealer in rugs in the city of Seattle. The appellant is a manufacturer of rugs, engaged in selling the same in wholesale quantities in New York City. In October of 1915, Mr. Waldron, who represented the respondent company, went to New York for the purpose of buying rugs. On the 22d of that month, he went to the appellant's sales room where he met Mr. Beattie, the president of the appellant company. Mr. Waldron had previously purchased goods from the appellant. He thereupon told Mr. Beattie that he wished to order a good sized bill of "seconds." These "seconds" are imperfect rugs which are sold at from ten to fifteen per cent below the wholesale price of perfect rugs. Mr. Beattie referred to his books and said to Mr. Waldron that he was entitled to seconds, and, after examining some rugs and securing prices, Mr. Waldron told Mr. Beattie that he would make up a list of rugs that he desired and would return later. On the 26th of the same month, Mr. Waldron returned to the office with a list of rugs which he had made up. Mr. Beattie was busy at the time and referred him to Mr. Hilgers, who was the appellant's salesman for the Pacific coast, saying to Mr. Waldron that Mr. Hilgers would take care of him. Mr. Hilgers thereupon wrote out an order for a large number of seconds, as Mr. Waldron dictated the order. After the order was completed and signed, one copy was given to Mr. Waldron, one copy was retained by Mr. Hilgers, and the third was turned over to Mr. Beattie. Mr. Waldron testified that there was no agreement that he should buy perfect rugs as a condition that he might have the order for seconds filled; that Mr. Beattie, after examining his books, stated to

him that he was entitled to seconds, and that thereupon he gave the order to Mr. Hilgers, who accepted it. Mr. Waldron thereupon left the office and returned to Seattle. Afterwards he wrote letters requesting that the order for the goods be filled and shipped to him at Seattle. Excuses were made by appellant to the effect that they did not have the goods in stock. Afterwards, Mr. Waldron was informed by Mr. Beattie that he would not fill the order, and this action was brought.

After the jury had heard the evidence and retired to consider their verdict, and after they had been out all night, they returned in the morning and asked the court the following question:

"Jury Foreman: If your Honor please, I think what the jury wished to ask you is whether or not the salesman in the employ of a corporation has the right to take an order for that corporation and in turn unqualifiedly bind that corporation as to his acts."

The court thereupon gave, among others, the following instruction:

"If, however, he (the salesman) did not have authority to accept unconditionally an order and agree to deliver the goods for the prices therein mentioned, but if he did do it and if his acts were known to Beattie, Beattie knew what he was doing and knew that he was pretending to sell the goods, that he was agreeing to sell the goods at that price, or if Beattie authorized him, then or at any time previous thereto, to make an agreement with or to sell goods, or to arrange with Waldron for the sale of goods, then that became the principal's, Beattie's, contract, binding on Beattie.

"If an agent makes a contract pretending to sell goods to Waldron, and the agent has, in fact, exceeded his authority, and knowledge of that fact comes to the principal and the principal then has reason to believe that the agent has exceeded his authority, it is his duty then, in good faith, to advise the person who supposed he had made the contract with the agent that the con-

tract was not the contract of the principal, that the agent had exceeded his authority. Good faith and fair dealing in business require a man to speak out when he has knowledge of facts the keeping of which will work to the injury, probably of the other party. So if the principal has knowledge that his agent has pretended to make a contract which in fact he had no authority to make, and knows that the purchaser is relying upon that as a contract of the principal, and he for an unreasonable length of time did not speak out and advise the purchaser timely of the real facts, when good faith requires that he should, then he may be considered as having ratified and adopted the agent's contract."

After receiving these instructions, the jury retired and soon returned with a verdict as above stated.

The specific objection to this instruction by the appellant, is that the jury were told that unless the defendant, after knowledge of the unauthorized act, did not communicate its repudiation to plaintiff, then the defendant was guilty of unfair dealing and the act became the contract of the defendant.

We think the instruction was not erroneous. In the case of *Baker v. Seattle & Puget Sound Packing Co.*, 95 Wash. 45, 163 Pac. 17, we said:

"Even if the agent had no authority to make the contract which was made with the respondent, after the principal had been informed of the contract and did not promptly reject it, but acquiesced therein, it seems too plain for argument that this would amount to a ratification of it. The trial court, after hearing the evidence, concluded that this was a ratification of the contract to the extent stated, and we are in entire accord with that conclusion, upon the record presented here. *Ankeny v. Young Bros.*, 52 Wash. 235, 100 Pac. 736; *McLeod v. Morrison & Eshelman*, 66 Wash. 683, 120 Pac. 528, 38 L. R. A. (N. S.) 783; *McIntosh v. Merchant*, 40 Wash. 477, 82 Pac. 753."

See, also, *Northwestern Lumber Co. v. Cornell,* 99 Wash. 250, 169 Pac. 590, L. R. A. 1918C 220.

The evidence in this case very clearly showed that at the time the order was given and signed by Mr. Hilgers, it was placed upon the desk of Mr. Beattie, who thereafter, when he was requested by letter to ship the goods, did not reject the order but stated that the goods were not in stock. The refusal to ship the goods was not made until nearly five months after the contract was made. Under this evidence we think the instruction was proper.

Upon the question of damages, the court instructed the jury as follows:

"The measure of damages is the difference between the contract price . . . and the price plaintiff could have sold the same for at retail in the Seattle market . . . less . . . cost . . . of resale."

We think there was no error in this instruction. In the case of *Sedro Veneer Co. v. Kwapil,* 62 Wash. 385, 113 Pac. 1100, we said:

"The measure of respondent's damages would be the difference between the price he was to pay appellant and the price at which he contracted to resell the shooks to his customers, less the expense incident to the delivering of them to his customers. In other words, that his measure of damages would be the net profits he would have made upon his sales had he been able to deliver the shooks but for the failure of appellant to furnish them as contracted for."

See, also, *Church v. Wilkeson-Tripp Co.,* 58 Wash. 262, 108 Pac. 596, 109 Pac. 113, 137 Am. St. 1059.

The appellant knew that the respondent was buying these rugs to be sold at retail in the Seattle market. The evidence shows that, between the time of the contract for the sale of the goods until the contract was

finally repudiated by the appellant, the wholesale price of goods of this character had advanced forty per cent. The evidence also shows, without dispute, that it was customary for dealers in rugs of this class to make a profit of fifty per cent over the wholesale price. The respondent testified that the contract price for the sale of these goods was $3,007; that if the goods had been shipped in accordance with the contract he would have sold the same for $6,315.75; that the cost of selling rugs in Seattle at that time was twelve per cent of the total or $757.89; so that his profits which he lost, by reason of the failure of the appellant to ship the goods as ordered, would have been $2,450. Under the facts which the jury must have found, we are satisfied that the instruction as to the measure of damages was correct.

The only other error assigned is that the court refused to grant a new trial. This assignment is based upon the two errors above discussed.

We find no error in the record. The judgment is therefore affirmed.

HOLCOMB, C. J., MITCHELL, MAIN, and TOLMAN, JJ., concur.