[No. 17601.  Department One.  March 8, 1923.]

THOMAS W. SIMMONS & COMPANY, *Appellant*, v. NORTH-
WESTERN JUNK COMPANY, *Respondent*.[1]

SALES (152, 156)—DAMAGES (74)—REMEDIES OF BUYER—LOSS OF
PROFITS—EVIDENCE—ADMISSIBILITY.  In an action for damages for
failure to deliver scrap iron, evidence of loss of profits through loss
of a resale in the Orient is not admissible where the action was
based, and the damages laid, upon the difference between the agreed
price and the market value at time and place of delivery, and it was
not alleged that it was purchased for a resale in the Orient.

SAME (156)—DAMAGES (72)—REMEDIES OF BUYER—EXPENSES IN-
CURRED BY BUYER.  In an action for damages for failure to deliver
scrap iron, recovery cannot be had for additional ocean freight, paid
on substitute material purchased, where there was no obligation
to deliver in time to load upon the ship originally intended to be
used and which charged a lower rate.

SALES (68)—DELIVERY AND ACCEPTANCE—TENDER OR OFFER BY
SELLER.  In an action for damages for failure to deliver scrap iron, it
is proper to instruct that it was conceded that two car loads were
tendered, and that if it complied with the contracts, recovery could
not be had thereon, where defendant's witnesses testified to the
tender without objection, and that it was a compliance with the con-
tracts, and plaintiff's counsel gave the court to understand that it
was conceded that the tender was made.

ACCORD AND SATISFACTION (9)—SETTLEMENT OF ACCOUNT—EVI-
DENCE—SUFFICIENCY.  There is a complete accord and satisfaction,
where there was a bona fide dispute as to the amount due for ma-
terials sold and delivered to plaintiff, a written statement of the
account was furnished defendant, and a check therefor tendered and
accepted in full settlement of the matter.

Cross-appeals from a judgment of the superior court
for King county, Griffiths, J., entered February 25,
1922, upon the verdict of a jury rendered in favor of
the defendant, in an action on contract.  Affirmed.

[1] Reported in 213 Pac. 485.

*Van C. Griffin,* for appellant.

*Riddell & Brackett,* for respondent and cross-appellant.

*Kerr, McCord & Ivey,* for respondent National Bank of Commerce of Seattle.

Holcomb, J.—Plaintiff sued on five separate contracts entered into with defendant for the purchase of scrap steel, aggregating 500 gross tons of bolts and rivets, mixed, and 550 gross tons of old rectangular ship plates, ⅜ to ¾ inches thick, two feet wide and up, and five feet long and up. Five separate causes of action were stated in the complaint. As a means of distinguishing these several different transactions, plaintiff adopted a system of numbering its orders by which it was assigned to each order, and following such number would appear the first letter in the name of the place to which the shipment was intended to be consigned. The number set forth in the first cause of action was "60-Y", intended to be consigned to Yokahama; the number set forth in the second cause of action was "20-T", indicating that the order was going to Tientsin; "57-H" was consigned to Hong Kong, and so forth.

In its first cause of action plaintiff claimed that, because of having been compelled to pay additional ocean freight for transportation of freight purchased in lieu of material agreed to be furnished by defendant, but which it claims was not furnished, the contract was breached. It is set forth in that cause of action, and in the bill of particulars furnished thereto, that plaintiff had purchased material from other sources to be used instead of the material which the defendant had failed to furnish, and had been compelled to pay a higher rate for the transportation thereof. This item of damage is made only in the first cause of action.

All five causes of action are for damages suffered by plaintiff on account of the alleged failure of defendant to deliver the steel scrap at the time and place contracted for in the five orders referred to. The contracts provided that defendant should deliver the material during the month of March, 1920.

Defendant admitted the execution of the contracts, denied their breach, and alleged that the steel scrap contracted for was of a lower market value, at the time and place of delivery, than the price fixed by the contracts.

Defendant also set forth an affirmative counterclaim or cross-complaint, alleging that there was due it upon a number of items from plaintiff a balance in the sum of $1,411.21. The allegations of the cross-complaint were denied by reply, and the issues under the cross-complaint and reply were tried by the court separately from the trial to the jury of the issues under the complaint of the plaintiff.

Both parties have appealed from adverse judgments against each, respectively, and are therefore designated in this opinion as plaintiff and defendant.

Plaintiff's first assignment of error comprises the refusal of the court to allow plaintiff to show the profits that it would have made upon resale of the material purchased from defendant; the refusal of the court to allow plaintiff to show that the material was resold at a profit in the Orient; refusal of the court to allow plaintiff to show the reasonable value or market value in the Orient of the material at the time that it could and would have been delivered if defendant had not breached its contract.

Under this assignment plaintiff urges that since, in its first cause of action, it alleged that it purchased old steel plates for delivery under contract of sale by defendant of old steel plates, and under contemplation of

delivery as in the contract provided, and had arranged and contracted for the transportation of old steel plates, all of which was known to defendant; and that it alleged under its contract, in the third and fourth causes of action, that it had purchased the steel ship plates for delivery of the same under contract of sale by it of old ship plates, which fact was well known to defendant; and that, in paragraph 5 of the fifth cause of action, it alleged that it purchased the bolts and rivets for delivery of the same under contract of sale by it of the bolts and rivets so purchased, which fact was known to the defendant; the damages sought by way of lost profits on resale were proper.

Plaintiff offered testimony at the trial to the effect that it had resold the material contracted from defendant at a profit, and that the same would have been delivered to its customers in the Orient if defendant had performed its contract. It offered to show the details of the prices at which it had resold the material contracted, in the Orient, which would show a difference of from $4.50 to $15 per ton between the contract price and the resale price.

To sustain its contention that a recovery of profits is the measure of damages on breach of contract, appellant cites the following cases: *Cedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100; *Waldron Co. v. Beattie Mfg. Co.*, 113 Wash. 533, 194 Pac. 557; *Church v. Wilkeson-Tripp Co.*, 58 Wash. 262, 108 Pac. 596, 109 Pac. 113, 137 Am. St. 1059; *Meyer Bros. Drug Co. v. Callison*, 120 Wash. 378, 207 Pac. 670.

None of the cases cited are in point on this case. In the plaintiff's complaint, it was not alleged that the scrap steel was purchased for resale in the Orient, and in the contracts alleged it was provided that the scrap steel was purchased to be delivered f. o. b. cars at Seat-

tle, or f. o. b. defendant's yard at Seattle, or f. o. b. Argo Yards. In *Waldron v. Beattie, supra,* we held that the measure of damages for that case was the difference between the contract price and the price plaintiff could have sold the same for at retail in the Seattle market, less the cost of resale. In *Meyer Bros. Drug Co. v. Callison, supra,* we held that no market price could be established for the raw product sold, under the evidence, except the market price in the east, which, with the freight and handling charges deducted, constituted the market price at the point of origin.

What was the basis of plaintiff's contemplated damages as demanded in its complaint is shown by the allegations as to the item of damages in each cause of action. Each cause sets forth that the materials were "reasonably worth, and were of the market value of $.... per ton at the time and place of delivery as stipulated in said written contract, and plaintiff has been damaged by reason of the breach of said contract in the sum of $....," (the amount being different in each cause of action). Computation shows the amount of damage pleaded was arrived at by multiplying the number of tons covered by each cause of action by the difference in the market value alleged and the contract price. The trial court very properly held that plaintiff had alleged its damages to be based upon the difference between the agreed price and the market value at the time of the alleged non-delivery in Seattle, and the allegations were supported by the several prayers for specific sums as being the amount to be recovered by reason of the difference between the contract price and the market value at Seattle. No special damages were alleged.

Plaintiff's first assignment of error therefore cannot be sustained.

The second claim of error by plaintiff is in denying recovery for additional ocean freight paid by it upon material purchased in lieu of material agreed to be delivered by defendant.

Plaintiff furnished a bill of particulars on demand, showing that the materials it purchased were originally intended for shipment on the City of Spokane, a vessel sailing from Seattle March 18, 1920, but contracts offered by plaintiff with the Admiral Line operating the City of Spokane show that the loading date for that ship was March 4, 1920. Hence, in order that plaintiff might use that space, defendant would have had to furnish the material by March 4, although its contract gave it the entire month of March within which to furnish and deliver the material. The trial court, therefore, properly held that defendant could not be bound by the difference in freight under such showing.

The plaintiff's third assignment of error is in instructing the jury that plaintiff admitted a tender of plates. And its fourth assignment, which is argued conjointly with the third, is that the court erred in giving instructions numbered 9 and 10 defining tender and the effect thereof.

The defendant's witness testified that two cars were loaded with ship plates having a certain number of angles, beams, and bars upon them; that the angles, beams and bars weighed approximately eighty tons. Defendant offered no evidence of any tender of other plates. The manager of plaintiff testified that the material contained in the cars consisted of plates attached to large eye-beams, a foot thick, weighing many times that of the plates; that other material was not flat, including part of the ship's smokestack and funnel. That he did not reject any material that approxi-

mately complied with the specifications of the contract. Plaintiff's contention is that the material offered by defendant in the two cars was not ship plates, and that the court erred in giving instruction numbered 10, as follows:

"It is conceded in this case that the Northwestern Junk Company offered to deliver to the plaintiff two car loads of ship plates which the plaintiff rejected. It is the contention of defendant, Northwestern Junk Company, that the two car loads of ship plates which it is conceded were thus tendered to the plaintiff, Simmons Company, consisted of material which the plaintiff bought and which complied with the terms of all four of the contracts for plate covered in the first four causes of action. If you find in accordance with these instructions that the material so offered was a compliance with any one or more than one of the contracts sued on in the first four causes of action, then your verdict will be for the defendant on each cause of action with which you find such material was a compliance, if any."

Defendant's witnesses, without objection, testified to the circumstances of the tender of this material. Not only was no objection made to the testimony as to the tender of the two cars of material, but the court was further given to understand by counsel for plaintiff that it was conceded that such tender of material was made, and who stated to the court that he did not make any objection that a tender under any one of these contracts was sufficient. The testimony of defendant was that the materials offered were sufficient to comply with the contracts. The testimony of the manager of plaintiff was that the manager of defendant had tendered some material under these contracts, and that the plaintiff had rejected it.

Under these circumstances, the court was undoubtedly blameless in stating in the instruction that it was

conceded that some material had been tendered under the contracts, which plaintiff rejected.

The instruction did not, as plaintiff contends, state to the jury that if any of the material tendered complied with the specifications of any of the contracts, that would operate to relieve the defendant from performing *all* of these contracts. The instruction definitely stated that, if the material so offered was a compliance with any one, or more than one, of the contracts sued upon in the first four causes of action, then the verdict should be for the defendant on *each* cause of action with which they should find such material was a compliance, if any. Such instruction was manifestly correct.

As to defendant's cross-complaint, the evidence in the record shows that a complicated account was delivered by plaintiff to defendant, together with a cashier's check for the sum of $3,787.01, being the amount shown by the statement to be due defendant, and the amount which the manager of plaintiff told the manager of defendant plaintiff would pay in settlement of the transactions. Defendant's manager testified that, when the check was brought to him, he was told by the manager of plaintiff, "there, take it or leave it;" and defendant's manager said: "You give me that check."

Defendant's contention is, and an ingenious argument is made to support it, that there was not a *bona fide* dispute existing between the plaintiff and defendant concerning the amounts due the defendant for material which had been delivered to plaintiff under the several contracts, on account of late delivery and expenses in handling the material.

But the trial court found that there was such a dispute existing on March 17, 1920, and that on that day, the written statement of account heretofore referred

to was furnished defendant and a check for $3,787.01 tendered and accepted in full settlement of the matters referred to in the exhibit. The evidence is overwhelming that the findings of the court are correct, the transaction amounting to an accord and satisfaction under our decisions. LeDoux v. Seattle North Pac. Shipbuilding Co., 114 Wash. 632, 195 Pac. 1006; Ingram v. Sauset, 121 Wash. 444, 209 Pac. 699; James v. Riverside Lumber Co., 121 Wash. 130, 208 Pac. 260.

The judgment against the defendant on the cross-appeal was therefore correct.

The judgment in favor of defendant on plaintiff's appeal was without error and is affirmed.

MAIN, C. J., BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.