[No. 10495. Department One. January 21, 1914.]

EDWARD WEBSTER, *Appellant*, v. JOHN L. BEAU *et al.*,
*Respondents.*[1]

CONTRACTS—REQUISITES—AGREEMENT UPON TERMS—CONSTRUCTION.
A contract whereby two persons agree to enter the fur trade by
placing a stock of trade goods at such place as they may select, the
stock to consist of such wares as they may deem proper, is not
binding until they agree upon the place selected or approve a stock
of goods which they deem suitable.

DAMAGES—BREACH OF CONTRACT—MEASURE OF DAMAGES—ANTICI-
PATED PROFITS. Anticipated profits cannot be recovered for breach
of a contract of partnership to establish an entirely new fur trading
business in a remote and sparsely settled country, under dangerous
and adverse conditions, there having been no existing business;
as the same are too remote, uncertain, and speculative.

SAME—MEASURE OF DAMAGES—EXPENSES AND LOSS OF TIME. Upon
breach by defendant of a contract of partnership whereby plaintiff
was to establish a new fur trading business in a remote and sparsely
settled country, without reference to any existing business, the
plaintiff may recover for losses sustained in the way of expenses in-
curred or loss of time in performing his part of the agreement.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered November 14, 1911, dismissing
an action for breach of contract, notwithstanding the verdict
of a jury rendered in favor of the plaintiff, after a trial on
the merits. Affirmed as to one defendant; reversed as to the
other.

*William Martin* and *Hugh C. Todd*, for appellant.

*Ira Bronson*, for respondents.

CROW, C. J.—Action by Edward Webster against John L.
Beau, H. T. Harding and Ed Born, to recover damages for the
breach of a written contract. The complaint, which purports
to state two causes of action, in substance alleges: That plain-
tiff has passed a number of years in that portion of Alaska
within the Arctic Circle known as the "Mackenzie River Coun-

[1]Reported in 137 Pac. 1013.

try," which is inhabited by fur bearing animals; that, during his sojourn there, he acquired extensive and valuable information relative to the fur trade and the methods of obtaining furs from the native Indians and Eskimos; that in 1907, at Nome, Alaska, John L. Beau, one of the defendants, requested him to enter into negotiations with the view of jointly engaging in the fur trading business; that later he asked that plaintiff accompany him to Seattle to confer with the defendants H. T. Harding and Ed Born; that further consultations were held in Seattle, all parties named being present; that on November 12, 1907, a verbal agreement, previously made, was reduced to writing by Beau on behalf of himself and the defendants Harding and Born, in the form of a letter or proposition, which Beau signed, and which plaintiff accepted and also signed; that the defendant Beau then requested that plaintiff proceed to San Francisco, to ascertain the plans of the whaling fleet for the next season, and also to secure suitable men to assist in conducting the contemplated fur trading business; that Beau then advanced $95 to plaintiff for immediate expenses, and promised further advances as needed; that plaintiff went to San Francisco, where he wrote a number of letters and sent a telegram to the defendant Beau, but received no answers; that in April or May, 1908, he mailed a registered letter to Beau, and received an answer in which Beau stated that he and his associates would not carry out the agreement; that plaintiff was capable of earning $5 per day, and that, for money disbursed in necessary expenses and for loss of time, he had sustained a loss of $1,985, upon which the $95 advanced by Beau should be credited.

The written proposal upon which the second cause of action is also predicated reads as follows:

"Mr. E. Webster,              Seattle, Wash., Nov. 12, '07.
    "Seattle, Wash.   Dear Sir:
    "Reference our conversation regarding McKenzie River Expedition will say:  We will arrange to place a stock of trade goods there at such a place as you and we may select.

The stock to consist of such wares as we may deem proper for the native trade purposes, shall constitute approximately the value of Twelve Thousand Dollars including duty and freight. The stock to be shipped on such carrier as will make best and lowest rates, concurrent with safety. The title and ownership of all wares and buildings erected shall be vested in us. You are to devote your time and efforts to handling and trading off the said wares and merchandise for fur, whalebone, etc., and for your services you are to receive thirty-three and one-third (33 1-3) per cent of the net profit of the McKenzie 'Your Stations.' The fur and trade goods obtained by you in exchange and otherwise shall be turned over to us on arrival of our boat each and every season, such furs are to be kept separate and distinct and sold to the best possible advantage, and separate and distinct accounts kept and rendered to you. All accounts and invoices and all matters pertaining to your station shall be subject to your inspection at all times. Two-thirds or 66 2-3 per cent of the net profit shall go to us. In taking stock of inventory for purpose of ascertaining profit or net results the cost of building or equipment shall not be figured. We will put in another stock the second year as large or larger if you advise us by mail to increase, otherwise practically same amount and commodities. Following propositions are to be part of our agreement and you can avail yourself of any or either at any time.

"First. If the profits during or within five years shall be such that we have during these five years or before our money and one hundred per cent profit, then and in that event from that time on you shall receive fifty per cent profit and be the one-half owner of all stock and buildings and title vested in you to that extent.

"Second. If you at any time invest or put in 16 2-3 per cent of all capital invested in your stations, then and immediately thereafter you shall receive fifty per cent of the profits and the 16 2-3 per cent or one-sixth of the property shall then be vested in your name.

"Third. If at any time you can establish the conditions as in article first, you shall receive a salary in addition to the fifty per cent profit.

"Fourth. In case you have made one hundred per cent net profit or more the first year, then you shall have one-half

or fifty per cent of the profit for your services and same ratio if the net profits shall be large, this also applies to subsequent years.

"Fifth. Any and all trading or buying the Schooner Abler does from Spring 1909 on between point one-half distance between Point Barrow and your station you shall receive twenty-five (25) per cent of the net profit. Of the profits derived from any purchases or trade made by Schooner Abler season 1908 from Camden Bay and East you will receive twenty-five per cent of the profits. Losses to be borne in same ratio as profit. You are to keep accurate account of all transactions.

"O. K. E. Webster.          Truly,          John L. Beau."

For his second cause of action, the plaintiff, after pleading the agreement, in substance alleged that the defendants refused and neglected to purchase goods in the sum of $12,000 for the partnership as agreed; that, as a result of such refusal, the entire season of 1908 was lost, together with profits that would have been earned by the plaintiff; that the portion of Alaska to which it was agreed the plaintiff should go with the goods was a section but little frequented by traders, where heavy profits in the fur, ivory and mercantile business would have been realized, and that the proposed partnership during the term of two years would have earned a net profit of $75,000. Plaintiff demanded judgment for $1,890 on his first cause of action, and for $25,000 on his second cause of action.

The defendants John L. Beau and H. T. Harding admitted the execution of the written agreement by John L. Beau, but denied all other allegations of the complaint. The defendant Ed Born has been dismissed from the action, and no further notice will be taken of him. The first trial resulted in a verdict for $14,905 in plaintiff's favor against the defendants Beau and Harding. Upon the hearing of the defendants' motion for a new trial, the trial judge, being of the opinion that anticipated profits were too remote and speculative to be made the basis of a recovery, ordered the

plaintiff to remit $13,585 from the verdict, or accept a new trial. Plaintiff refused to make any remission, and a second jury trial was had before a different judge, who instructed the jury and tried the cause upon the theory that lost profits for one year only could be recovered, and that there could be no recovery for expenses or lost time. Following this instruction, the second jury returned a verdict for $8,000 in plaintiff's favor against the defendant John L. Beau. Motions for a new trial were interposed by the plaintiff and the defendant Beau. The defendants also interposed a motion for judgment notwithstanding the verdict. The latter motion was sustained, and a judgment of dismissal was entered for the reason that the trial judge concluded that no contract between the parties had been proven. The plaintiff has appealed.

The trial judge in substance instructed the jury that the written instrument would not be binding upon the parties until (1) they agreed upon and selected a place or station in which to install their stock of goods, and (2) they had selected and approved a stock of goods which they deemed suitable for trading purposes. This instruction was given upon the theory that the written instrument itself contemplated the performance of these prerequisite conditions to make it a binding contract. There was evidence that the station and stock of goods had been agreed upon. As the jury found in appellant's favor on the issue involved, the instruction, although excepted to by appellant, could not have been prejudicial as against him; yet, in view of the new trial which must be ordered, we announce our approval of the instruction as given.

Other assignments of error, in substance present two questions: (1) Whether appellant can recover damages occasioned by loss of anticipated profits, and (2) whether he can recover damages occasioned by loss of time, and for necessary disbursements. The trial judge at first held he could recover for loss of anticipated profits only, and that the con-

tract, being one for a partnership which could be terminated at any time after the business had actually been installed, appellant's claim for lost profits should be confined to those that might have been earned during the year 1908. He further held appellant could not recover for loss of time, or for expenses incurred. As before stated, a verdict was returned for $8,000; but later the trial judge sustained respondents' motion for judgment *non obstante veredicto* on the theory that no valid contract had been shown. We conclude that he erred in sustaining the motion, and also erred in the theory upon which he tried the case.

There was sufficient evidence to be submitted to the jury upon the issue whether there was a definite, certain, and binding contract, and the jury upon such evidence which was properly submitted found a valid contract had been made. We hold that, under the contract here involved, appellant was not entitled to recover damages for loss of anticipated profits. The contract contemplated the establishment of a future business in a remote and sparsely settled country, under dangerous and adverse conditions. It did not pertain to any existing business. Any loss of profits would necessarily mean the loss of such anticipated profits as might possibly be earned in the future from a business not yet created, installed or conducted. There was no going business which had previously earned profits sufficient to form a basis upon which to estimate probable future profits. Evidence offered to show a loss of profits in this action would necessarily consist of opinions of witnesses, uncertain and speculative in character. Who could anticipate or foretell that circumstances or contingencies might not have arisen after the business had been actually installed which would result in a total failure to earn any profits whatever? It is common knowledge that parties expecting profitable results frequently enter upon business enterprises which terminate in failure. This court, in common with others, has held that

15—77 WASH.

loss of profits, under certain conditions, may be the basis of a recovery in actions for damages, and appellant has cited the following cases from this court in support of that rule: *Skagit R. & Lum. Co. v. Cole,* 2 Wash. 57, 25 Pac. 1077; *Federal Iron and Brass Bed Co. v. Hock,* 42 Wash. 668, 85 Pac. 418; *Belch v. Big Store Co.,* 46 Wash. 1, 89 Pac. 174; *Church v. Wilkeson-Tripp Co.,* 58 Wash. 262, 108 Pac. 596, 109 Pac. 113, 137 Am. St. 1059.

The first three cases cited, either award damages for actual losses which were not in the nature of profits, or disclosed an established business which presented facts and practical experience upon which an estimate of lost profits could be intelligently predicated. In the *Church* case, a recovery was allowed only for commissions on sales shown to have been actually made. An examination of the authorities will show that the courts, with marked uniformity, have announced the doctrine that, where an established business has been interrupted or destroyed by breach of contract, or by tort, a resulting loss of profits may become the basis of a recovery, there being a past experience sufficient to render the extent of such loss reasonably certain, and fairly susceptible of proof. *Bogart v. Pitchless Lumber Co.,* 72 Wash. 417, 130 Pac. 490. The cases from this court cited by appellant, where the loss of profits was involved, are in harmony with this rule. The doctrine is equally well established that a loss of prospective profits will not become a basis of recovery in an action upon the breach of a contract to launch a new venture or business.

"Where a profit has actually been made, this may be proved as very pertinent to the question what the future profits would probably have been had not the business been interrupted, and as a material aid to the jury in the solution of this question; but where no profit has ever been realized, the mere loss of an opportunity to try to make a profit is of too uncertain value to be compensated." 1 Sedgwick, Damages (9th ed.), § 193.

Counsel cite and especially rely upon *Dennis v. Maxfield*, 10 Allen 138, to sustain appellant's right to recover for loss of prospective profits herein. Commenting on that case, Mr. Sedgwick, in his work on damages, immediately after the quotation above made, further says:

"In *Dennis v. Maxfield* the plaintiff was hired for a whaling voyage, and was to receive a certain 'lay' or percentage of the profits, and additional compensation if the cargo reached a certain amount. Being wrongfully dismissed, it was held he could recover compensation for both items of loss, the voyage having ended and the profits of the voyage being known. . . .

"This, it must be noted, is a contract where the profits are those of a business, not the profits of the plaintiff's individual exertions. He may in such a case wait until the business is completed and the profit realized, and then recover his proportion, as he did in the case just cited; or if the business has been so long established that he can reasonably prove that a profit will be realized, he may recover at once upon the breach. But if it is a new enterprise, and there is no proof that profit will be made, the plaintiff can prove no loss and should recover no damages on account of the loss of profits; the burden of proving a profit is upon him."

This rule is well sustained by authority. *Kenny v. Collier*, 79 Ga. 743, 8 S. E. 58; *Central Coal & Coke Co. v. Hartman*, 111 Fed. 96; *Paola Gas. Co. v. Paola Glass Co.*, 56 Kan. 614, 44 Pac. 621, 54 Am. St. 598; *Winslow Elevator & Machine Co. v. Hoffman*, 107 Md. 621, 69 Atl. 394, 17 L. R. A. (N. S.) 1130.

"Where a new business or enterprise is floated and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation." 13 Cyc. 59.

"The loss of profits to a business which has been wrongfully interrupted by another is an element of damage for which a recovery may be had; but it must be made to appear that the business was an established one—that is, that it had

been successfully conducted for such a length of time and had such a trade established that the profits thereof are reasonably ascertainable." *States v. Durkin*, 65 Kan. 101, 68 Pac. 1091.

A clear distinction is manifest between an interruption of, or an injury to, an existing business which has been successfully conducted for a considerable period of time, and the prevention of the establishment of an entirely new business. When the business is in contemplation, but not established, profits that may be anticipated therefrom are too speculative, uncertain, and conjectural to become a basis for the recovery of damages in an action for the subsequent loss of such profits.

As there was evidence sufficient to sustain the finding of the jury that a valid and definite contract had been entered into between appellant and respondent Beau; and as, under the rule heretofore announced, appellant cannot recover damages for the loss of prospective profits, it necessarily follows that he is entitled to recover such losses as he actually sustained in the way of expenses incurred in performing his part of the agreement, and for loss of time while thus engaged. This was the view entertained by the court on the first trial when appellant was ordered to remit a considerable amount of the verdict, or submit to a new trial, and is the theory upon which the case must be again tried.

Upon the last trial, there was an absolute failure of evidence sufficient to show that the defendant H. T. Harding was a party to the contract, or that he had authorized the respondent Beau to act for him when entering into the contract. As to the defendant Harding, the judgment of dismissal was properly entered. As to the respondent Beau, the judgment is reversed, and the cause is remanded for a new trial upon the issues joined between him and the appellant. The appellant will recover his costs in this court from the respondent Beau.

MOUNT, PARKER, GOSE, and CHADWICK, JJ., concur.