[No. 12010.   Department One.   December 15, 1914.]

Roy A. Whitcomb *et al.*, *Appellants*, v. Hanson Sager *et al.*,
*Respondents*.[1]

Brokers — Contracts — Performance or Breach—Rescission —
Evidence—Sufficiency. A broker who received a twelve months' ex-
clusive selling agency of a tract of platted land, on the condition
that he go to Portland and open office for the purpose of selling the
property, breaches his contract where, after two months in Portland,
he closed the office and returned for economic reasons, the sales
made not warranting the expense, and therefore his principals in-
curred no liability for damages in rescinding the contract.

Same — Contracts—Validity—Rescission by Owners—Fraud —
Evidence—Sufficiency. The evidence warrants a finding that il-
literate owners of property were overreached and defrauded, where
it appears that they made an oral agreement with a broker whereby
the broker was to sell their land on a commission of 25 per cent, he
to pay the costs of platting, etc., and they testified that the written
contract as drawn, requiring the conveyance by them of a fourth
interest to the broker, was falsely read over to them omitting that
provision, and that the deed they executed therefor they believed
to be a duplicate of the contract; since the inequality of the transac-
tion, whereby they deeded a fourth interest in property of the value
of $8,000, upon an express promise to plat and advertise it, and an
implied promise to sell it, is apparent.

Same—Contracts—Ratification by Owners. Illiterate owners
of property, who have been induced by fraud to deed one-fourth of
the property to the broker in advance, as his 25 per cent commis-
sion for making sales, without knowing that they had made such
deed, did not ratify the transaction, where, as soon as they learned
the full import of the paper transactions, they disavowed them.

Same—Contract for Commissions—Breach—Measure of Dam-
ages. In an action by a broker against his principal for damages for
breach of contract, tried upon the theory that the measure of dam-
ages was his actual loss sustained in performing the contract, and in
which it was assumed that his prospective profits were too remote
and speculative to be considered, the broker cannot retain one-fourth
of the property, deeded to him in advance as his twenty-five per
cent commission on sales on the assumption that he would earn it
by selling all the property, where he was unable to sell all the land,
and had retained commissions on parcels sold in excess of his earned
commissions plus his reasonable expenses.

[1]Reported in 144 Pac. 922.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered October 20, 1913, in favor of the defendants, in an action for specific performance and for damages, tried to the court. Affirmed.

*Troy & Sturdevant*, for appellants.

*Thomas M. Vance* and *Harry L. Parr*, for respondents.

Gose, J.—This is an action for specific performance and for damages flowing from the alleged breach of a contract. There was a judgment for the defendants. The plaintiffs have appealed.

The record discloses the following facts: On the 21st day of February, 1911, the appellant husband, hereafter called the appellant, and the respondents signed a contract the body of which is as follows:

"It is hereby mutually agreed, by and between Hanson Sager and Ann Sager (husband and wife) parties of the first part, and Roy A. Whitcomb, party of the second part, that said party of the second part, for and in consideration of a good deed to an undivided $\frac{1}{4}$ interest in the following described real property, to wit: N. E. $\frac{1}{4}$ of Sec. 32 T. 16 N. of R. 3 W. of Willamette Meridian, about 160 acres minus the R. R. right-of-way and the Co. road which crosses it, agrees to have above described piece of property surveyed, platted and recorded and placed on the market for the mutual benefit of the owners and subject to the following conditions, to wit: Party of the second part shall have the right to use his judgment as to the size and location of the tracts or lots surveyed and platted;

"(2) That he shall with reasonable expedition get the surveying and platting done, and all the preliminaries, in fact, to the placing on the market of the above described piece of property shall be executed in a reasonable time;

"(3) That he assumes the cost of all surveying, platting and recording of said piece of property from the time of the initial survey until the last lot or tract shall have been disposed of (as far as it affects the $\frac{3}{4}$ interest retained by parties of the first part);

"(4)   That he shall not place this property on the market at a selling price that shall not average at least $70 per acre for the entire place as it lays before platting;

"(5)   That he shall advance the taxes now due on the above place and that he shall advance the taxes necessary for a lawful record of the plats when they shall be ready for record, parties of the first part however agree to refund exact amounts of said tax payments out of the first moneys collected for tracts sold;

"(6)   That party of the second part shall transact all the business of advertising the above proposition at his own expense, and that he shall expend a sum for advertising same of not less than $100, if that amount be necessary before the whole proposition shall be disposed of;

"(7)   That the parties of the first part agree to refund all moneys paid out by the party of the second part for necessary expenses in placing the above on the market and contingent advertising fees out of the first moneys paid for lots or tracts at the rate of 50 per cent of party of the first part's share of such fees, provided that it finally comes out of said party of the second part's share in the moneys from the sale of the entire property;

"(8)   That the expense of making contracts and deeds, abstracts, etc., shall be borne by the parties of the first part to the amount of $2.50 per transfer on an average, party of the second part to stand out of his share of the moneys derived from the sale of the lots and tracts any amount over that sum;

"(9)   That the parties of the first part are given the right to pick out such tracts to the limit of 25 acres for a homestead, subject to the interest of the party of the second part in the whole proposition, which party of the second part agrees to give a quitclaim deed without compensation;

"(10)   That the price of $70 per acre can be made less at the option of the parties of the first part, but can not be put on the market at less than $50 per acre without the consent of the party of the second part."

Contemporaneously with the signing of this instrument, the respondents signed a deed of general warranty purporting to convey to the appellant an undivided one-fourth interest in the 160 acres of land described in the contract.   On

the 17th day of April, the appellant and the respondents caused a plat of the property to be filed for record as Sager Place Addition to Rochester, a small town in Thurston county. On the 15th day of May, at the instance of the appellant, the respondents signed the following writing:

"Rochester, Washington, May 15, 1911.
"No. of Acres, Blocks 1, 2, 3, 4, 5, 6, 7, 10, 11, 14, 15, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37, also Blocks 8, 13, 16, 20 and 23, in Sager Place Addition to the Town of Rochester, Wash., to be sold on an average of 10 per cent over $70 per acre counting the half of the street and alleys adjoining each tract.

"We hereby give R. A. Whitcomb the right to sell this property for a period of twelve months and thereafter until otherwise notified. He agrees to list and advertise the same and we agree to allow him a commission of 10 per cent on accepted price and to give abstracts of title thereto. In case the property is sold by other than R. A. Whitcomb, we agree to allow him a commission of 10 per cent. If he sells at price less than stated above we will only pay as much of the 10 per cent as shall be above the average of seventy dollars per acre. (This is in addition and subject to his present ownership.)"

On the 13th day of June, the appellant conveyed to his wife and coappellant, by a deed of quitclaim, the property embraced in the deed from the respondents to him. The appellants quitclaimed the twenty-five-acre homestead to the respondents agreeably to the provisions of the ninth clause of the contract. The consideration for the second contract was that the appellant should go to Portland, Oregon, for the purpose of selling the property. He went to Portland on the 13th day of June, opened an office, advertised the property for sale, and made a number of contracts for sale of small tracts of the property. On the 26th day of September, the appellant closed his office in Portland, as he says for economic reasons, and returned to and remained at his home in Rochester. On the 27th day of November, the appellant made a demand upon the respondents that they

execute a deed to each of two purchasers who had made final payments on their contracts. They refused to execute the deeds, and notified the appellant that they repudiated all contract relations with him. The business relations between the parties thereupon terminated. The appellant made no sales between the date of the closing of his office in Portland and the 27th day of November.

The appellants seek, (a) to compel specific performance in favor of the two purchasers who have made final payments upon their contracts; and (b) to recover damages covering surveying and platting, advertising, office and traveling expenses and loss of time, to the extent of $4,018.74, in consequence of the alleged breach of the contracts by the respondents.

The respondents answered, alleging, in substance, that they are illiterate and inexperienced in business; that it was agreed between them and the appellant that he should have the exclusive sale of the property at a commission of twenty-five per cent; that they signed the first contract upon the express representation and upon the belief that the agreement was expressed in the contract; that they signed the deed conveying to the appellant an undivided one-fourth of the property upon his representation that it was a duplicate contract, and that they did not know that they had executed a deed until advised of that fact by their attorney many months later. The respondents pray, among other things, for a decree annulling the two contracts, the deed to the appellant, and the deed from him to his wife and co-appellant, which purport to convey an undivided one-fourth of the 160 acres of land. A decree was entered annulling the contracts and the deeds. Plaintiffs have appealed.

The consideration for the second contract was that the appellant should go to Portland for the purpose of selling the property. He went to Portland on June 13, opened an office, expended about $500 in advertising the property and in paying office expenses, closed the office on September 26,

and returned to and remained at his home in Rochester. He said: "From the 4th of July on the sales were so few and far between that it wouldn't pay to keep the office open in Portland at the heavy expense I was under. It was an economic proposition that I come back to Rochester where expenses were lighter. There was a temporary slump and I couldn't tide it over, didn't have the funds." He had been in Rochester two months when the respondents notified him that they declined to be bound by either contract. He offers no suggestion that he intended to return to Portland. We think the appellant's conduct showed that he did not intend to return to Portland, and that his testimony, construed in the light of his conduct, warranted the court in concluding that he had breached this contract, and hence that the respondents incurred no liability for damages thereunder.

The parol testimony in reference to the first contract is in direct conflict. The appellant and two of his brothers testified that this contract and deed were read and explained to the respondents before they signed them. It is admitted that the respondent wife can neither read nor write. The respondents testified that the clause in the first contract in reference to conveying to the appellant an undivided one-fourth of their property was not read to them; that they signed the deed believing it to be a duplicate contract, and that they signed the contract believing that it embraced their oral agreement, which was that the appellant should plat and sell the property for a commission of twenty-five per cent of the proceeds of the sale of the property.

It would seem that no sane man or woman would have knowingly made a contract requiring the conveyance of a one-fourth interest in his or her property upon an express promise to plat the property and advertise it for sale, and upon an implied promise to sell the property. The testimony shows that the property was worth $8,000. Under the terms of the contract and the deed, the respondents advanced to

the appellants the fee title to property worth $2,000, to be paid for in future services. The inequality of the transaction speaks for itself, and abundantly warranted the court in reaching the conclusion that the respondents correctly detailed the transaction and that they were overreached and defrauded.

But it is argued that fraud must be established by clear and convincing evidence. We think it was so established.

It is assumed that the appellant should be permitted to retain the undivided one-fourth interest in the property. This he has not earned, for the reason that he has not performed his implied contract to sell the property.

It is contended that he should be permitted to recover as damages for the breach of the contract all sums paid for surveying, platting, and advertising the property. It is said that these damages are recoverable, (a) because there was no fraud in the original contract, and (b) because the respondents, if overreached, have ratified and affirmed the contract. The first point has been sufficiently considered. In respect to the claim of ratification, the facts are these: The respondent husband admits that he was told shortly after the execution of the contract that he had deeded a portion of his land to appellant. Before the execution of the second contract, he submitted the first contract to an attorney. There is no evidence, however, that he told the attorney that he had made a deed, or that the attorney advised him that the contract required him to convey to the appellant an interest in the property. The respondent wife,· who can neither read nor write, testified that, on the 14th day of April, her daughter said to her over the telephone: "Do you know you have deeded all your place away to Roy Whitcomb?" This was the first information she had concerning the deed. The appellant admits that he received from sales $612. · The exhibits show that he received $1,145.20. He paid the respondents $175 at different times in sums varying from ten to thirty dollars. He mailed statements with the several

checks. The respondents testified that they did not understand the statements. The respondent husband was sixty-six years of age. The age of the wife is not shown, but it may be deduced from their entire testimony that they did not understand the full import of the contract or the deed to appellant until about the time they told him that they repudiated the whole transaction. The respondents knew that under the two contracts they had agreed to pay the appellant a commission of thirty-five per cent for selling the property, but they did not appreciate the fact that they had conveyed one-fourth of their property in advance of the performance of any services. Nor was there anything in any of the statements which even tended to give notice of that fact.

"When a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation. An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm. 'This doctrine seems to rest not upon the principle of a new contract between the parties, nor yet upon the ordinary principle of estoppel *in pais*, but rather upon a distinct principle of public policy, that all that justice or equity requires for the relief of a party having such cause to impeach a contract is that he should have but one fair opportunity, after full knowledge of the rights, to decide whether he will affirm and take the benefits of the contract or disaffirm it and demand the consequent redress. Any other rule would be regarded as unjust, even toward the party guilty of the wrong out of which grows the right to rescind.' " 6 Cyc. 297, 298.

In *Eldridge v. Young America etc. Min. Co.*, 27 Wash. 297, 67 Pac. 703, we said, quoting from Bigelow on Fraud, p. 436:

"The defrauded party to a contract has but one election to rescind the same. If he once determines his election, it is

determined forever. Hence if it be shown that he has at any time after knowledge of the fraud, either by express words or by unequivocal acts, affirmed the contract, his election is irrevocable."

We accept these excerpts as a correct statement of the equitable principles which control this case. We do not think, however, that the respondents, after knowledge of the fraud—that is, after they understood the full import of the entire paper transaction, either by express words or unequivocal acts, ratified it. Indeed, it may be confidently said that, as soon as the light broke in on them, if in fact they even now understand the full import of the paper transactions, they disavowed them.

The case must be affirmed upon another ground. It was tried upon the theory that the measure of damages is the loss actually sustained in expenses reasonably incurred in the performance of the contract and by loss of time while thus engaged. *Webster v. Beau*, 77 Wash. 444, 137 Pac. 1013, 51 L. R. A. (N. S.) 81. It was assumed that the prospective profits were too remote and contingent to be considered in estimating damages. *Church v. Wilkeson-Tripp Co.*, 58 Wash. 262, 108 Pac. 596, 109 Pac. 113, 137 Am. St. 1059. Upon this theory, the appellant cannot retain the property conveyed to him upon the implied promise that he will earn it by selling the land. Upon the same theory, if it be assumed that the respondents ratified the transaction after they had obtained full knowledge of its import, the appellant cannot recover damages for the reason that he has received and retained moneys in excess of his commission plus his reasonable expenses incurred upon the first contract.

The question has not been briefed as to the right of the appellants to enforce specific performance in favor of third parties. They may desire to pursue some other remedy. In the absence of authority upon this question, we have thought it best to leave these matters to be settled by private treaty

between the parties, or in a suit between the respective pur-
chasers and the respondents.

The judgment is affirmed.

CROW, C. J., PARKER, MORRIS, and CHADWICK, JJ., concur.