[No. 17111.  Department Two.  November 9, 1922.]

## CAROLENE SALES COMPANY, *Appellant,* v. CANYON MILK PRODUCTS COMPANY *et al., Respondents.*[1]

SALES (154)—DAMAGES (74, 118)—MEASURE OF DAMAGES—ANTICIPATED PROFITS—EVIDENCE—SUFFICIENCY.  Special damages in the loss of anticipated profits from the breach of a contract in furnishing an inferior article of a new condensed milk product are not the approximate result of the breach, within the contemplation of the parties, and cannot be recovered, where the process of manufacture was new, technical and highly speculative and experimental, and depended upon the public attitude, market conditions and chances of successful manufacture, and where the buyer was under no obligation to buy the product and continued to put it upon the market with the knowledge that the manufacture was defective; since such damages can only be recovered where the business had such permanency and recognition that its profit could be reasonably approximated.

SAME.  In such case, special damages cannot be recovered for money spent in advertising and creating a market, where the buyer was under no obligation to do anything, but merely had the option to buy the product.

SAME.  If such evidence was not sufficiently definite and certain to enable the buyer to recover for lost profits, it could not recover damages to the name label, license for which had not expired.

Appeal from a judgment of the superior court for King county, Jurey, J., entered October 6, 1921, upon findings in favor of the defendants, in an action on contract, tried to the court.  Affirmed.

*Wright, Kelleher, Allen & Hilen,* for appellant.

*Julius L. Baldwin* and *Preston, Thorgrimson & Turner,* for respondents.

MAIN, J.—Appellant acquired the right to use the trade-mark "Carolene" for a canned product of skimmed milk and cocoanut oil, and on April 1, 1920, entered into a contract with respondent Canyon Milk

[1]Reported in 210 Pac. 366.

Products Company for its manufacture. By its terms, the contract was to run for three years from its date. The seller was required to supply so much of its product as the purchaser might desire up to the capacity of the plant. The price was made to depend upon the wholesale price of a similar product known as "Hebe", and the contract contained a provision that, if the cost of manufacture exceeded the price provided for, the seller should have the option to cease manufacture until prices advanced sufficiently to permit the seller to manufacture above its cost.

At the time of the making of the contract, respondent was operating a milk condensery at Enumclaw and this contract replaced a similar one made a short time previously for the manufacture of the product in a plant at Snohomish; both plants being controlled by the same individual. The contract recites that the product was a new one in the territory west of the Rocky Mountains, and that it was contemplated that a market might be there established. The evidence shows that, when the product was first placed upon the market, it sold rapidly and in comparatively large quantities, and the sales continued to increase until the bad product hereinafter mentioned reached the consumers. This result was obtained by an extensive advertising and sales campaign put on by the appellant.

The first Carolene supply came from Snohomish and gave satisfactory results, each sale being followed by orders for increased quantities. The product of the Enumclaw plant, however, did not prove so satisfactory. For some reason which no one has been able to explain, a great deal of this product was inferior, and in many cases practically worthless, and as the season advanced the proportion of bad product increased, so

that by September the demand failed rapidly and at the time of trial there was no market.

In the meantime respondent milk company made a common law assignment for the benefit of its creditors in favor of the respondent Seattle Merchants' Association, and appellant entered into a stipulation with the latter respondent by which any manufactured product on hand could be used for replacement of bad milk without prejudice to either party as to its rights under the contract.

Appellant sued for damages upon three main items, viz.: loss of profits; the sums expended by it in advertising and other preliminary expenses; and damages to the value of the label "Carolene," for which appellant held a license. Appellant recovered judgment for $185.95 as the balance due it for expense of replacement over and above the sums due respondent for Carolene supplied.

The first question is whether the appellant is entitled to recover for loss of profits which it would have made had the contract not been breached by the furnishing of an inferior article. The rule is that special damages by way of anticipated profits arising from the breach of a contract in furnishing an inferior article may be recovered when such damages are the natural and proximate result of the breach and can be said to be such as may be presumed to be within the contemplation of the parties and which the evidence establishes with reasonable certainty. *Cannon v. Oregon Moline Plow Co.,* 115 Wash. 273, 199 Pac. 39.

Whether the present case comes within the rule must depend upon its particular facts. The trial court found that the business of the appellant did not amount to an established business; that it was highly speculative and experimental and depended upon the

fluctuating attitude of the public toward the product, the market conditions and the chance of successful manufacture, as well as the opposition of rival concerns, and possibly of hostile legislation. Both the managing officers of the appellant, as well as of the respondent, were ignorant of the manufacture and sale of the product. The appellant procured the respondent to enter into the experiment and undertook to demonstrate and teach to the respondent's agents the process of manufacture. The manufacturing process was technical, new and difficult and liable to errors and expensive mistakes. After some of the defective Carolene had been delivered to the appellant, with knowledge of this fact, appellant continued to purchase the product in quantities and undertook further to instruct in the manufacture thereof. The appellant continued to put the product upon the market, knowing that it was proving to be defective. The contract between the parties did not obligate the appellant to buy the product from the respondent, but only gave it the right to do so. The contract also gave to the respondent the right to cease manufacturing the Carolene when to do so it would suffer a net loss. Taking into consideration the facts as found by the trial court, and which are sustained by the evidence and the provisions of the contract just referred to, it does not appear that the business, even though successful for the first few months, can be said to have become an established business. Time alone, of course, is not conclusive upon this question, but must be taken into consideration with all the surrounding facts and circumstances. Each party was careful in the contract to protect itself in the event that the undertaking did not prove successful.

In *Andreopulos v. Peresteredes*, 95 Wash. 282, 163 Pac. 770, the rule of the case of *States v. Durkin*, 65

Kan. 101, 68 Pac. 1091, is approved, where it was held that, before special damages for loss of profits to a general business occasioned by the wrongful acts of another may be recovered, it must be made to appear that the business had been in successful operation for such a period of time as to give it permanency and recognition, and that such business was earning a profit which could be reasonably ascertained and approximated. The evidence in the present case shows that, after the business had been prosecuted for four or five months, the market conditions for such a product were not as active as they had previously been. It cannot be held that, had the market not been affected by the bad product, the appellant, during the succeeding months, could have reasonably anticipated the continued profitable operation of the business. The respondent had been manufacturing the product at a loss, and, as already stated, under the contract it was not required to continue under such circumstances.

The appellant, however, argues that if it is not entitled to recover for loss of profits, then it is entitled to recover the sums expended by it in establishing the market, such as advertising and other preliminary expenses. The general rule is that all necessary expenses incurred by a party in complying with the terms of a contract may be recovered as damages in an action for the breach thereof. 17 C. J. 800; *Webster v. Beau,* 77 Wash. 444, 137 Pac. 1013, 51 L. R. A. (N. S.) 81. The present case is not within that rule because here the money expended by the appellant in placing the product upon the market was not done in complying with the terms of the contract, since the contract did not require the appellant to do anything, but only gave it the right to purchase.

Appellant further claims the right to recover dam-

ages for what it calls injury to its label. It is true that, at the time of the breach of the respondent in furnishing a bad product, the right of the appellant to use the label would not expire for two years. If, however, the evidence is not sufficiently definite and certain to enable the appellant to recover lost profits, it is difficult to see how it could be sufficiently definite and certain to enable it to recover damages to the label.

The judgment will be affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.