[No. 18274.    Department Two.    January 28, 1924.]

# W. D. LLOYD, *Respondent*, v. AMERICAN CAN COMPANY, *Appellant*.[1]

CONTRACTS (5)—PARTIES—ASSENT AND EXECUTION—CONTRACTUAL RELATION.  Where a manufacturing company entered into a contract with a patentee to manufacture motor sets and sell and deliver them to authorized agents, under a subcontract to be furnished the agents, upon payment of a stated price for the sets, it cannot claim that there was no contractual relation between it and such authorized agents, and it is a breach of the contract to refuse to sell the same to an authorized agent.

ALTERATION OF INSTRUMENTS (4)—FILLING IN BLANKS—AUTHORITY.  Where a contract is delivered to another, with unfilled blanks, such other person has implied authority to fill in the blanks according to the agreement of the parties and the agreement so filled is as binding as if originally executed in complete form.

CONTRACTS (4)—ASSENT—MUTUALITY — CONSIDERATION.    A contract whereby a manufacturing company agreed to manufacture patented motor sets and sell the same to agents appointed by the patentee who were compelled to purchase from the manufacturer and buy a certain number of credit memos to be applied on the price, there was a sufficient consideration for its agreement to sell to appointed agents, whether it was otherwise mutual or not.

SAME (133)—PERFORMANCE OR BREACH—CONDITIONS.  A breach of such a contract is shown where, after terminating and cancelling its contract with the appliance company in November, it gave no notice thereof to an agent having a contract for one year beginning October 1st, but continually promised to fill orders, until in March it gave notice to the agent that the contract was cancelled and that it would not fill any orders.

DAMAGES (74)—SALES (154)—BREACH OF CONTRACT—MEASURE—EXPENSES INCURRED.  Where agents, appointed to sell patented motor sets, were compelled to purchase a certain number of credit memos at $2.00 each to represent and be applied on part of the purchase price of each set, which a manufacturer agreed to sell and deliver at a certain price, the measure of damages for the manufacturer's breach of the contract includes the sums paid by an agent for the credit memos, since they represent an expense in preparing to carry out the contract, and an advance payment on

[1]Reported in 222 Pac. 876.

the price, constituting a loss naturally and directly attributable to the breach.

SAME. In order to recover necessary expenses in preparing to carry out a contract, it is not necessary to show that the expenses could have been recouped if the other party had not breached the contract.

DAMAGES (75)—BREACH OF CONTRACT—MEASURE—LOSS OF TIME. In an action to recover for breach of contract, it is not prejudicial error to receive testimony as to the value of plaintiff's lost time and the value of the time of a reasonably competent man, where the only testimony on the subject was that of the plaintiff himself and the damage was the same whether measured by the value of his services or of a reasonably competent man.

SAME (75). In such a case, the plaintiff is entitled to recover the reasonable value of the time he actually loses while engaged in preparing to perform his contract.

INTEREST (7)—DEMANDS NOT LIQUIDATED—LOSS OF TIME. On breach of a contract, the plaintiff is entitled to recover interest on an item of expense incurred in preparing to perform the contract which could be easily ascertained by a computation; but not on a sum awarded for plaintiff's loss of time which was unliquidated and not ascertainable by a mere computation; nor for reasonably necessary expenses, where only a court or jury could determine the items and amount which were reasonably necessary.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 24, 1923, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action on contract. Modified as to interest.

*Tenney, Harding & Sherman, Danson, Williams & Danson (R. E. Lowe, of counsel)*, for appellant.

*Graves, Kizer & Graves*, for respondent.

BRIDGES, J.—The plaintiff brought this suit to recover damages resulting from the alleged breach by the defendant of a contract by the terms of which it is alleged that it agreed, for a consideration, to furnish to him a certain number of appliances known as the ''Duzz-all'' motor set, consisting of a small motor

adapted to the operation of a variety of small devices furnished therewith.

The Universal Appliance Corporation owned the patents and plans for the manufacture of this device. It entered into a written agreement with the defendant by the terms of which the latter was to manufacture and assemble the "Duzz-all" sets and deliver them only to selling agents who were to be appointed by the appliance corporation. The contract, among other things, provided for a "special dealers' purchasing contract," a form of which was attached to the main contract as exhibit D, and was executed by the defendant and approved by the appliance corporation. This exhibit D was to be furnished to all selling agents appointed by the appliance corporation. The portions thereof material to the decision of this case are:

"The Universal Appliance Corporation . . . having furnished us [American Can Company] with certain dies and devices for the manufacture of motor appliances . . . we . . . agree to furnish to all regularly authorized agents . . . of the Universal Appliance Corporation the said Duzz-all motor sets with such attachments as are hereinafter named . . . at and for the price of —— dollars per set when dealer's order is accompanied by the payment of —— dollars in cash . . . and two dollars dealer's credit memo, which has been regularly issued to said dealer (or agent) by the Universal Appliance Corporation . . . It is understood that the Universal Appliance Corporation is the sole and exclusive owner of the Duzz-all motor and its several appliances and that the American Can Company has no authority whatever to enter into any agreement with any dealer for the purchase and sale of the Duzz-all motor or any of its appliances and it is only obligated to assemble and ship the Duzz-all motor sets to the regular agents, dealers or assigns of the Universal Appliance Corporation upon such orders as are hereinabove provided. We further agree that a printed

copy of this obligation may be furnished to all persons appointed in writing by the Universal Appliance Corporation.''

This instrument also gives a detailed description of the various instruments constituting the Duzz-all sets. The contract made by the Universal Appliance Corporation appointing the respondent the sole distributing and selling agent of the Duzz-all sets within the county of Los Angeles, state of California, for the period of one year from October 1, 1919, set out a copy of this exhibit D. That instrument further shows that, as a part of the consideration for the appointment, the respondent purchased from the appliance corporation 5500 ''special dealer's credit memos'' at $2 each, making a total of $11,000. These are the same credit memos mentioned in exhibit D executed by the appliance corporation and the defendant. These memos were particularly provided for in the main contract between the defendant and the appliance corporation, where it was set out that the latter should issue, as per a designated form, ''special dealer's credit memos'' to each of its agents and dealers upon payment of $2 each. The whole arrangement between the appliance corporation and the appellant as shown by the main contract between them contemplated that the selling agents appointed by the appliance corporation would purchase the motor sets from the appellant by paying it a designated sum in cash (being a sum somewhat in excess of the actual cost of the set to the appellant) and also one $2 credit memo for each set and that upon receipt of these payments the appellant would ship to the agent as ordered. It was not contemplated that the agent or dealer should see, or have any knowledge of, the terms of the main contract. His information was such only as he would obtain from a reading of exhibit D above

mentioned and which was made a part of his contract with the appliance corporation.

In the copy of exhibit D which was given to the respondent by the appliance corporation, the blanks therein were filled to show the price of each motor set was $18.50, being $16.50 in cash and a $2 credit memo.

After receiving his appointment the respondent expended considerable sums of money in creating a market for, and preparing to sell, the motor sets. After filling one or two orders, the appellant notified the respondent that it did not consider itself under any contractual obligations to him, and that it would not thereafter honor or fill any orders which he might make for motor sets under existing contracts. The respondent considered this a breach of his contract and this suit resulted. The case was tried to the court sitting with a jury, and after the testimony was in, the jury was instructed to bring in a verdict for the respondent for the amount of the unused credit memos, with interest thereon from the date of the breach, and also for such amounts as the jury should determine the respondent had reasonably expended in building up a market and preparing to perform his contract, together with interest on such sum from the date of the breach of the contract and also for loss of respondent's time, with like interest. Under these instructions, the jury returned a verdict for $19,183.84, and judgment was entered thereon.

(1) Appellant contends that there was no contractual relationship between it and the respondent. It is clear to us that the contrary is true. It must be remembered that the respondent had no knowledge whatsoever concerning the original contract between the appliance corporation and the appellant. All he had before him was the contract which is evidenced by

exhibit D, and that instrument clearly shows that the appellant agreed to sell and deliver to the respondent such motor sets as he would order, provided the order was accompanied by the necessary cash and credit memos. It says that, "we [appellant] further agree to furnish all regularly authorized agents, dealers or assigns of the Universal Appliance Corporation, the said Duzz-all motor sets," upon payment to it by the agent or dealer of certain sums. These and other similar provisions can amount to nothing but a contract between the appellant and respondent. It is true, appellant did not sign the contract which respondent had with the appliance corporation, but it authorized its subcontract (exhibit D) with that company, whereby it agreed to sell the motor sets to the respondent, to be made a part of it, thereby binding it as thoroughly as if it had actually executed respondent's contract. In reading this subcontract, the respondent could come to no other conclusion than that the appellant was legally obligated to furnish him such sets as he might order and pay for in the manner provided.

(2) Appellant further contends that, if it should be held that, under ordinary circumstances, exhibit D would make a contract between it and the respondent, such cannot be the case here, because that exhibit as contained in respondent's contract is not a true copy of the original. The only material change between exhibit D as a part of the original contract and exhibit D as a part of the respondent's contract is that certain blanks as to prices were filled in. The original exhibit provided that the appellant should sell and deliver motor sets at $—— price per set. This blank was filled in by the appliance corporation so as to provide that the price should be $16.50 in cash, plus the $2 credit memo. It is claimed that the appliance corpor-

ation had no authority to put these figures into the special dealer's contract and bind the appellant thereto. Such, however, is not in our judgment the law. Exhibit D was put into the possession of the appliance corporation for the use hereinbefore mentioned. It had authority to embody that instrument in, and make it a part of, any contract which it might make with agents. Such being the case, the appellant impliedly authorized the appliance corporation to fill in the blanks contained in exhibit D. It is a general rule of law that, if an instrument containing blanks is delivered to another, that other has at least implied authority to fill the blanks.

"Blanks, of any description, left in writings not under seal, may, except so far as prohibited by the statute of frauds, be filled in pursuance of mere parol authority, and it may be laid down generally that if one signs an instrument containing blanks, he must be understood to entrust it to the person to whom it is so delivered to be properly filled in, according to the agreement between the parties, and when so filled the instrument is as good as if originally executed in complete form." 2 C. J. 1242.

Respondent knew nothing about exhibit D except as it appeared in his contract. Nor is it contended that appellant was injured by the manner in which the blanks were filled or that the figures put therein were wrong. Plainly, appellant is estopped, as against respondent, to claim that exhibit D was incorrectly embodied in respondent's contract.

(3) But appellant contends that, in any event, the contract between it and respondent is unenforcible because of lack of mutuality. Its argument is that, while it may have bound itself to furnish the respondent with such number of motor sets as were ordered and paid for, there was no obligation on his part to

purchase any of the sets, and that while appellant has promised to sell, respondent has not promised to purchase.

Any contract containing a consideration is enforcible whether it is otherwise mutual or not. A promise from one party is sufficient to support that from another. Indeed, mutual promises are but a certain form of consideration. *Sultan R. & Timber Co. v. Great Northern R. Co.*, 58 Wash. 604, 109 Pac. 320, 1020; *Mowbray, Pearson Co. v. Stanton Co.*, 109 Wash. 601, 187 Pac. 370, 190 Pac. 330; 6 R. C. L. 686. We have no doubt that there was a sufficient consideration here to support the contract. The general plan of procedure as outlined in the main contract and exhibit D was that the appellant would do the manufacturing and assembling of the motor sets and that the appliance corporation would appoint agents throughout the country to sell the sets and that each agent should be required to purchase a certain number of credit memos and those, together with certain cash, should be sent to the appellant in payment for the sets. The respondent actually purchased $11,000 worth of credit memos. He could not use them except in the purchase of motor sets, and he could make purchases only from the appellant. This situation, in our opinion, formed an ample consideration for the contract.

Appellant relies chiefly on the case of *Mowbray, Pearson Co. v. Stanton Co., supra,* and *Brewster District Unit v. Monroe,* 117 Wash. 21, 200 Pac. 841. There is a wide difference between those cases and the one at bar. The agreement in the *Stanton* case was that, in consideration of the Pearson company soliciting orders for and delivering ice within a certain district in the city of Spokane, the Stanton company agreed to sell it ice for a certain period at a certain

price. There were neither mutual promises nor consideration in that contract. The Pearson company did not agree to purchase any ice or even to solicit orders or deliver ice anywhere. It was under no obligation at all. It neither paid anything nor suffered any loss to support the promise of the Stanton company to sell the ice to it. Substantially the same condition of affairs existed in the *Brewster* case, *supra.*

(4) But it is contended that appellant has not breached the contract. We cannot accept this view. Respondent's contract was for the year immediately following October 1, 1919. On March 25, 1920, he had a letter from the appellant stating that, during the previous November, it had cancelled and terminated its contract with the appliance corporation and that it would not make any deliveries under that agreement. In part it said:

"We had no liability towards any special dealer upon the contract and we are not now under such liability. . . . While we do not recognize any liability towards you for a situation which was created by the action of the Universal Appliance Corporation, yet we are willing to do whatever we can consistently with our contract to make the credit memos which you held when we terminated our contract available in the purchase of motor sets."

The letter then proceeds to suggest the making of one of two new contracts both of which were to be materially different from that provided for in exhibit D. Although appellant had terminated its contract with the appliance corporation in November, 1919, it did not inform the respondent thereof until March, 1920. Meanwhile respondent gave it orders for motor sets and paid it moneys in accordance with the exhibit D contract. For some reason, instead of rejecting those orders and notifying respondent that it would

not fill them, it wrote many letters to him promising to fill the orders and giving various excuses for delay. It seems to us that appellant's letter can be construed in no other way than that it meant to deny any contractual obligation with the respondent, and that what it said and did was a pointed refusal to abide by the contract which we have held it had with respondent. Under all the authorities, upon receipt of this letter, the respondent was entitled to consider the contract breached.

(5)   The court instructed the jury as follows:

"I instruct you that you will return a verdict for the plaintiff in the following amounts; first, the amount paid by the plaintiff for credit memos, namely $2 each for 5500 credit memos, being a total of $11,000, less eight sets received by the plaintiff, at $2 each, being $16, leaving a balance upon this item for which you will return a verdict in the sum of $10,984.00."

Appellant contends that this instruction was erroneous because it fixed the wrong measure of damages and that in no event was this item recoverable. Its argument seems to be that the respondent would be entitled to recover this sum only in the event the testimony showed that, during the life of his contract, if it had not been breached by the appellant, he would have been able to sell a sufficient number of motor sets to have consumed the total number of credit memos which he purchased; and that, since there was no testimony to this effect, he was not entitled to recover anything on account of payments made for the credit memos. On the other hand, the respondent's argument is that expenses incurred in preparation for performance of a contract are always recoverable as damages in the event of its breach and that these credit memos represent such expenses. The rule of law contended for by the respondent is unquestionably correct.

"All necessary expenses incurred by a party in complying with the terms of the contract may be recovered as damages in an action for the breach thereof. Within this rule are expenditures made in anticipation of or preparation for performance." 17 C. J. 800.

See, also, *Webster v. Beau,* 77 Wash. 444, 137 Pac. 1013, 51 L. R. A. (N. S.) 81.

The only question deserving discussion is, whether the payments made by respondent in the purchase of the credit memos were expenses in preparing to perform the contract. As we have stated, the agreement between the appellant and the appliance corporation contemplated that the latter should appoint agents who would find customers to purchase the motor sets from the appellant; and under the agreement, one could not become an agent except he purchased a designated number of credit memos at $2 each, which was to represent a part of the purchase price for each motor set. Doubtless, one of the reasons for requiring the agent to make these purchases was to induce him to make greater efforts to sell the sets in order that he might ultimately recover the moneys so spent by him. In this way these memos were a part of the expense of carrying out the contract. But if, strictly speaking, these memos did not represent an expense in preparing to carry out the contract, they certainly did represent an outlay the loss of which would naturally and inevitably result from appellant's failure to furnish the motor sets. It knew respondent was an agent; it knew he had purchased these memos and the amount he had paid for them; it knew that they were to be used in purchasing from it the motor sets; it knew that, if it refused to deliver the sets, the memos would be valueless. In other words, this loss was naturally and directly attributable to the wrongful action of appellant.

Nor was respondent required to prove that, if the contract had not been breached, he could have used all his memos in purchasing and selling motor sets. The purchase of the memos was in effect an advance payment on the purchase price of the 5500 motor sets which respondent was entitled to get. Appellant's breach entitled respondent to recover the purchase price paid.

"The party who voluntarily and wrongfully puts an end to a contract and prevents the other party from performing it, is estopped from denying that the injured party has not been damaged to the extent of his actual loss and outlay fairly incurred." *United States v. Behan,* 110 U. S. 338.

(6) It is claimed that the court erred in receiving evidence concerning, and in instructing the jury to return a verdict for the plaintiff for, all amounts reasonably incurred and expended by him, as shown by the evidence in preparing for the sale of the 5500 motor sets.

Reasonable compensation is the measure of damage for the wrongful breach of a contract. Some of the authorities hold that a plaintiff may not recover both loss of profits and expenses incurred in preparing to perform the contract, because a duplication of recovery would result. We are not troubled with that question here because the respondent did not seek to recover any loss of profits. The contract between the parties necessarily contemplated that the respondent would be at expense in building up a market and in making preliminary arrangements for the sale of the motor sets. It was a new device. The public had no knowledge of it. If they were to be sold at all, a market must be built up; and in order so to do, there must be preliminary expenses. The appellant's profits necessarily depended upon the number of sales made by the sales

agents.   It cannot be denied, therefore, that the appellant knew that the respondent would be required to expend various sums in preparing to successfully carry out the contract.   Appellant contends, however, that there is no proof that, if the contract had not been breached, the respondent would have been able to make sales and thereby recoup the expense which he had been put to in preparing to perform the contract.   But while such proof may be necessary in order to recover lost profits, it is not necessary in order to recover outlay in building up a market for, and in preparing to sell, the product.   This question has been clearly and elaborately discussed in *United States v. Behan, supra,* the court saying:

"But when he [the plaintiff] elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is, the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. . . .   It does not lie, however, in the mouth of the party, who has voluntarily and wrongfully put an end to the contract, to say that the party injured has not been damaged at least to the amount of what he has been induced fairly and in good faith to lay out and expend (including his own services)."

See, also, 17 C. J. 800.   To the same effect are the following cases:  *Holt v. United Security Life Ins. Co.,* 76 N. J. L. 585, 72 Atl. 301, 21 L. R. A. (N. S.) 691; *Pond v. Harris,* 113 Mass. 114; *Bernstein v. Meech,* 130 N. Y. 354, 29 N. E. 255; *Worthington v. Gwin,* 119 Ala. 44, 24 South. 739, 43 L. R. A. 383; 8 R. C. L. 495; *Webster v. Beau, supra; Kennedy v. Meilicke Calculator Co.,* 90 Wash. 238, 155 Pac. 1043; *Andreopulos v. Peresteredes,* 95 Wash. 282, 163 Pac. 770.

The case of *Kennedy v. Meilicke Calculator Co., supra,* is very close to this one.   There the plaintiff sued for breach of a contract which was one establish-

ing an exclusive agency in certain territory for the sale of patent medicines. The testimony showed that the plaintiff had expended various sums in preparing to perform the contract, but the medicines were of such defective and faulty nature that he was unable to sell them. We said:

"If the contract was breached by the defendant, plaintiff was entitled to recover all moneys he had necessarily paid out under and in faith of the contract."

The plaintiff was allowed to recover for cash paid for medicines, traveling expense, advertisements and office expenses.

The appellant relies on the case of *Carolene Sales Co. v. Canyon Milk Products Co.*, 122 Wash. 220, 210 Pac. 366, as supporting its contention, particularly with reference to the recovery of items of expenditure. There the plaintiff owned the right to manufacture a certain product made of skimmed milk and cocoanut oil. He entered into a contract with the defendant whereby the latter was to manufacture the product to the extent of plaintiff's requirements. The latter expended considerable sums of money in building up a market for the product and for a short time the business was good, but it was ruined later because the defendant manufactured certain of the product in a defective manner, which product, before its defects became known to the plaintiff, was largely distributed among his customers. The plaintiff sought to recover the amount he had expended in building up a market for the product. We recognized the general rule as we have hereinabove stated it but refused to apply it to the facts of the case, saying:

"The present case is not within that rule because here the money expended by the appellant in placing the product upon the market was not done in comply-

ing with the terms of the contract, since the contract did not require the appellant to do anything, but only gave it the right to purchase.''

At first reading, this case would seem to support appellant's views, but a more thorough study of it will show that its facts distinguish it from the case at bar, because there the contract had nothing to do with marketing the product, and the holding was, in effect, that the expenditures in building up a market were not within the contemplation of the parties.

(7) We cannot agree with the contention of the appellant that the court erred in receiving testimony concerning the value of the time lost by respondent in preparing to perform his contract and in giving an instruction to the jury on the same subject. Respondent first testified that the value of his time lost was at least $1,000 per month. Later, the trial court expressed the view that the proper measure of his damage in this regard was the value of the time of a reasonably competent man. The respondent then testified that such a value would not be less than one thousand dollars a month. This last testimony was improperly received because it was not based on the correct measure of damage. But there was no prejudicial error because it appears that the only testimony on this subject was that of the respondent himself and his testimony was that the damage was the same whether measured by the value of his services or the value of the services of a reasonably competent man.

Nor do we think the court's instruction was wrong when he told the jury they should include in their verdict ''the value of the time actually given by the plaintiff in the prosecution of this work as shown by the evidence in this case, which value must not exceed the reasonable value of the time of a person skilled in

and competent to carry out an undertaking of the kind and character involved in this case, and not exceeding the sum of $1,000 a month alleged in the complaint.'' The rule ought to be, and we believe is, that the plaintiff is entitled to recover the reasonable value of the time he actually lost while engaged in preparing to perform his contract. *Turner v. Great Northern R. Co.*, 15 Wash. 213, 46 Pac. 243, 55 Am. St. 883; *Webster v. Beau, supra.* This is substantially what the court instructed. It is true he also advised the jury that the value must not exceed the reasonable value of the time of a person competent to carry out an undertaking such as this which, if given alone would have been error, but which, in this instance, could not have misled the jury. What we have said concerning recovery of expenses generally applies to respondent's right to recover for loss of time.

It is gratifying to us that the conclusions we have reached on the foregoing points are in accord with those reached by the United States court of appeals in an identical case. See *American Can Co. v. Garnett*, 279 Fed. 722. That case affirmed a judgment entered by Judge Rudkin. The length of this opinion forbids quotation from the opinion in that case.

(8) There were three items of damage allowed by the court and jury—the amount of the credit memos which respondent had purchased, the amount of his expenses incurred in preparing to perform the contract, and for loss of time. The court instructed the jury to include in its verdict interest on each of these items from the date of the breach of the contract.

We have no doubt that interest was properly computed on the item of unused credit memos. The amount of these was certain and could easily have been computed by both parties under the rule of law which we are next to discuss.

We are of the opinion, however, it was error to allow interest on the $2,500 which was awarded to the respondent for loss of time. The rule which has been adopted by this court (and obtains in many other jurisdictions) is that interest will be allowed on all such unliquidated demands as can be ascertained by mere computation. Where the demand is for something which requires evidence to establish the amount of the damage, interest will not be allowed prior to judgment. A full discussion of this question will be found in *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837, where Judge Main, speaking for the court, said:

"The general rule is that interest will not be allowed upon unliquidated demands prior to the time when such demands are merged in the judgment. This rule, however, like many general rules, has its exceptions. One of the exceptions is that interest will be allowed upon an unliquidated demand when the amount thereof can be ascertained by mere computation. . . . Where, however, the demand is for something which requires evidence to establish the quantity or amount of the thing furnished, or the value of the services rendered, interest will not be allowed prior to the judgment."

To the same effect, see *Parks v. Elmore,* 59 Wash. 584, 110 Pac. 381; *Dornberg v. Black Carbon Coal Co.,* 93 Wash. 682, 161 Pac. 845, and cases cited. There was no way by which appellant could compute the value of respondent's time. That amount could be arrived at only on testimony as to the competency, experience and earning ability of the respondent under such conditions. A good many cases hold that, if there be a reasonably certain standard of measurement by the correct application of which one could ascertain the amount he owed, interest should run on an unliquidated claim. But there cannot be any such standard in connection with the character of the work respond-

ent performed in this case. The length of this opinion forbids further discussion of the authorities on this question. Extensive notes will be found to the cases of *Fell v. Union Pac. R. Co.*, 28 L. R. A. (N. S.) 1; *Pearson v. Ryan*, 3 A. L. R. 805.

We have also come to the conclusion that interest should not be allowed on the item of $2,101.15 for moneys paid out in preparing to perform the contract. While it is true that the amount of this expenditure was, or could easily have been made, definite and certain, yet the respondent was not entitled to recover it simply because he had expended it but only in the event the expenditure was reasonably necessary for the purpose. As to what items and amounts would be reasonably necessary, was a matter which only a court or jury could determine. There would not be any way of computing it in advance, nor could it be computed by any reasonable standard of measurement. The amount of interest thus allowed was $381.

We conclude that the item of interest on the amount fixed for loss of time, amounting to $480, and interest on the amount of expenses incurred in preparing to perform the contract, amounting to $381, must be eliminated. These items amount to $829.80.

We have not presented one or two other points discussed in the briefs because we consider them to be without merit.

The judgment is modified to the extent of deducting therefrom the total sum of the two items of interest disallowed, amounting to $829.80, and in all other respects it is affirmed.

MAIN, C. J., FULLERTON, MITCHELL, and PEMBERTON, JJ., concur.